THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD R. DAVIS II, Defendant-Appellant.

First District (2nd Division)   No. 1—89—0980

Opinion filed October 23, 1990.

Sidney H. Projansky, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, David R. Butzen, and Mercedes Luque-Rosales, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant appeals from an order of the circuit court which sustained the statutory summary suspension of his driving privileges. He maintains that the trial court's judgment must be reversed because the State failed to establish that at the time of his arrest he was under the influence of alcohol and in "actual physical control" of his vehicle. We affirm.

The record indicates that in the early morning hours of February 14, 1989, Illinois State trooper Joseph Micci arrested defendant for, among other things, driving under the influence of alcohol. The reports filed by the officer reflected that defendant failed the field-sobriety tests which were given to him and that his blood-alcohol concentration was tested at 0.10. Since that amount exceeded the statutory limit, defendant was informed that his driving privileges would be suspended in 46 days, and this information was later confirmed in a letter to him from the Secretary of State.

On February 16, 1989, defendant filed a petition in circuit court seeking to rescind the projected suspension of his driving privileges. As grounds defendant alleged, in pertinent part, that he was not properly placed under arrest for an offense defined in section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501) (Code), and that the arresting officer did not have reasonable

grounds to believe that he was driving or in actual physical control of a vehicle while under the influence of alcohol.

At an expedited hearing on the motion, defendant testified that around midnight on February 14, 1989, he was alone in his vehicle, a Chevrolet Suburban, driving from downtown Chicago to Schaumburg. About an hour later, he realized that he was not feeling well, so he pulled his vehicle onto the shoulder of the expressway at Frontage Road and Illinois 72, locked the doors and turned off the engine, but left the keys in the ignition. He then climbed over the console between the two front bucket seats, zipped himself inside a sleeping bag and fell asleep on the back seat. He estimated that it was about 1:30 a.m. at this time, and testified that he did not recall anything further until he was awakened by a trooper and taken out of his vehicle. During cross-examination, defendant acknowledged that he had been drinking earlier that evening.

Trooper Micci testified that at about 4:24 a.m. on February 14, 1989, he investigated a car which was parked on the right shoulder of east Frontage Road near Illinois 72. When he looked inside this vehicle, he saw a key in the ignition, but noted that the engine was not running. He also saw a money clip with currency on the dashboard, and upon further investigation, he observed defendant lying on the back seat in a sleeping bag. Micci then tried to rouse defendant and enter the vehicle, but when his attempts were unsuccessful, he called for help. The combined efforts of the responding officers, which included honking their horns and sounding their sirens, also failed, however, and when the paramedics arrived on the scene, they broke a window, unlocked the door and talked with defendant inside. Next, they stood defendant outside of the vehicle while he was still in his sleeping bag, and after defendant unzipped the bag, he responded to certain questions which were posed to him. At the station, defendant told Micci that he had started driving home about "3 to 3:30 a.m.," and had been sleeping for the last three hours. During cross-examination, Micci stated that he ascertained that the vehicle belonged to defendant, and that when defendant first emerged from it, Micci observed that his eyes were bloodshot, that there was a strong odor of alcohol coming from his breath and that his speech was slurred.

In his subsequent testimony for the State, Micci added that defendant appeared to be disoriented when he emerged from the vehicle, as if he could not perceive what was going on, and that defendant did not mention that he was not feeling well. In their subsequent conversation at the station, defendant told him that he had been drinking beer that evening, but he did not know how much.

When Micci testified that defendant failed the field-sobriety tests which were administered to him, defense counsel objected to any further questioning along those lines because it impinged upon the criminal charge. At that point, the court commented: "As I understood, he is only raising the issue as to whether he was in physical control of the automobile." When defense counsel responded, "I think that's the issue," the court sustained the objection. In the arguments which followed, the parties focused on defendant's control of the vehicle, and at their conclusion the court denied defendant's motion for rescission. In doing so the court found that the trooper was a credible witness, while defendant was not, and that the evidence indicated that defendant was in physical control of the automobile.

On appeal, defendant takes issue with the court's conclusion, arguing first that he was not properly placed under arrest for an offense defined in section 11—501 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.) Specifically, defendant asserts that the State failed to establish that he was in actual physical control of his vehicle at the time of his arrest. As evidence, he points to the testimony which showed that he was asleep inside a zippered sleeping bag on the back seat of his car, and contends that this posture and position demonstrate that he was not in actual physical control of the vehicle and that he had no intention of driving it farther that morning. In addition, defendant claims that he was fostering highway safety by "sleeping it off," which he feels should be looked upon with favor in determinating the issue of control.

The State responds to these arguments by referring to the evidence which showed that defendant was the sole occupant of the vehicle, that he had locked himself inside of it and had left the keys in the ignition, which gave him the capability of operating the vehicle. The State asserts that these factors demonstrate that defendant was in actual physical control of his vehicle and that defendant's intent to drive is irrelevant because the State is not required to prove it. *People v. Cummings* (1988), 176 Ill. App. 3d 293, 530 N.E.2d 672.

■■ ■ As a preliminary matter, we observe that the Illinois Vehicle Code prohibits a person from driving or being in actual physical control of a vehicle within this State with a breath- or blood-alcohol concentration of 0.10 or more, or while under the influence of alcohol. (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(1), (a)(2).) Violation of this statute subjects the offending motorist to the summary suspension of his driving privileges for a designated period of time (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501.1, 6—208.1), and the propriety of this suspension may be tested in a judicial hearing (Ill. Rev. Stat.

1985, ch. 95½, par. 2—118). At such a hearing, the defendant-motorist has the initial burden of presenting a *prima facie* case for rescission, and the trial court's finding will not be reversed on review unless it is against the manifest weight of the evidence. *People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210.

■ What constitutes "actual physical control" of a vehicle in drunk driving matters has been given considerable attention by our courts with varying results. In general, however, Illinois courts and those foreign jurisdictions which have similarly worded DUI statutes agree that a motorist need not be actually driving a vehicle in order to be in actual physical control of it (*People v. Brown* (1988), 175 Ill. App. 3d 676, 530 N.E.2d 74; *Montana v. Taylor* (1983), 203 Mont. 284, 661 P.2d 33; *Commonwealth v. Kloch* (1975), 230 Pa. Super. 563, 327 A.2d 375); and, as noted above, defendant's intent to put the car in motion is irrelevant to that determination. *People v. Cummings* (1988), 176 Ill. App. 3d 293, 530 N.E.2d 672; *State v. Duemke* (Minn. App. 1984), 352 N.W.2d 427.

Apart from these factors, the issue of actual physical control is considered a question of fact to be decided on a case-by-case basis. (*People v. Cummings*, 176 Ill. App. 3d at 295.) Certain factors, such as whether the motorist is positioned in the driver's seat of the vehicle in possession of the ignition key and has the physical capability of starting the engine and moving the vehicle, are repeatedly singled out as indications that the motorist is in actual physical control of the vehicle. (*People v. Heimann* (1986), 142 Ill. App. 3d 197, 491 N.E.2d 872; *Gore v. Maryland* (1988), 74 Md. App. 143, 536 A.2d 735; *Garcia v. Schwendiman* (Utah 1982), 645 P.2d 651.) Courts finding actual physical control have also noted defendant's sole presence in the vehicle and that the vehicle doors were locked. See, *e.g., State v. Hall* (S.D. 1984), 353 N.W.2d 37; *People v. Mattison* (1986), 149 Ill. App. 3d 816, 500 N.E.2d 1103.

■ ■ It is also well established that a finding of actual physical control will not be defeated by facts showing that defendant was asleep when he was discovered (*People v. Brown*, 175 Ill. App. 3d 676, 530 N.E.2d 74; *Taylor v. McNeill* (Mo. App. 1986), 714 S.W.2d 947), or unconscious (*People v. Chamberlain* (1972), 5 Ill. App. 3d 235, 282 N.E.2d 784), or in a vehicle which is off the road in a ditch. (*State v. Thurmer* (Minn. App. 1984), 348 N.W.2d 776; see also *Garcia v. Schwendiman* (Utah 1982), 645 P.2d 651 (physically obstructed from driving away).) Furthermore, reviewing courts have rejected suggestions that a contrary conclusion be drawn where defendant was slumped to the passenger side of the vehicle (*State v. Williams* (Mo.

App. 1988), 752 S.W.2d 454; *State v. Ryan* (1987), 229 Mont. 73, 744 P.2d 1242), or had his head on the driver's door with his legs extended across the front seat. *Petersen v. Department of Public Safety* (S.D. 1985), 373 N.W.2d 38.

We disagree with defendant's contention that the only indication of his having control of the vehicle that day was that he had left the key in the ignition. Defendant overlooks that he was the sole occupant of the vehicle, that the doors were locked, and that he had the physical capability of starting the engine and moving the vehicle almost instantly. Moreover, no one else could have had control of the vehicle unless defendant had relinquished his. *Peterson v. Department of Public Safety*, 373 N.W.2d at 39.

Defendant, relying on the court's language in *People v. Heimann*, maintains that a finding of actual physical control requires the driver's presence in the front seat of the vehicle. The language of the *Heimann* court relied upon by defendant is as follows:

"Actual physical control of a vehicle requires only that one is behind the steering wheel in the driver's seat with the ignition key and physically capable of starting the engine and moving the vehicle." *Heimann*, 142 Ill. App. 3d at 199, citing *City of Cincinnati v. Kelley* (1976), 47 Ohio St. 2d 94, 351 N.E.2d 85.

*Cummings*, citing *Heimann*, affirms that, "Generally, proof that the defendant was in the driver's seat, possessed the ignition key, and had the physical capability of starting the engine and driving or moving the vehicle establishes actual physical control." (*Cummings*, 176 Ill. App. 3d at 295.) Indeed, as the *Cummings* court points out, this type of "evidence has repeatedly been held to indicate actual physical control." (176 Ill. App. 3d at 295.) This is not the same as saying, however, that the defendant in these cases must, as a matter of law, always be found to occupy the driver's seat in order to be held as being in actual physical control of a vehicle, for to so hold would contradict the admonitions of *Heimann* and *Cummings* that "actual physical control is a *question of fact* which must be decided on a *case-by-case* basis." (Emphasis added.) *Cummings*, 176 Ill. App. 3d at 295, citing *Heimann*, 142 Ill. App. 3d 197, 491 N.E.2d 872.

In both *Heimann* and *Cummings* the defendant's presence in the driver's seat was a mere fortuity rather than an essential ingredient of the statutory requirement that he be in "actual physical control" of his vehicle. Our research does not disclose, nor have we been furnished with, any authority which holds that a defendant, as a *sine qua non*, occupy the driver's seat of his vehicle in order to be in actual physical control of the vehicle in incidents of the type under consider-

ation in this case. There are, however, exceedingly robust policy reasons, consonant with the provisions of our statute, for a holding to the contrary—reasons best expressed by the Minnesota Court of Appeals:

> "[T]he actual physical control offense is a preventive measure intended to deter drunken drivers from getting into their vehicles, except as passengers. *** Cases dealing with the issue of 'actual physical control' therefore evaluate whether a finding in a particular case will support these recognized policy concerns." *State v. Thurmer*, 348 N.W.2d at 778.

Thus, to preclude a finding of actual physical control because of a driver's presence in the back seat of his vehicle would completely vitiate the purpose of our drunk-driving statute, *i.e.*, keeping intoxicated drivers out of their vehicles. The driver's location in the back seat in no way makes him harmless. Here, defendant could in an instant get back into the driver's seat just as easily as he made it to the back seat: by straddling the console between the two bucket seats.

Juxtaposing the composite of factors present in this case against the decisions we have reviewed above, the reasoning set forth therein, and the purpose of the legislation, we conclude that the circuit court's finding of actual physical control was not against the manifest weight of the evidence.

In reaching that conclusion we have also considered the public policy argument proferred by defendant that where the facts indicate that the motorist is "sleeping it off," the trial court should be allowed to find that he was not in actual physical control of his vehicle. We observe that while statutory enactments have provided for such an exception (see, *e.g., State v. Smelter* (1984), 36 Wash. App. 439, 674 P.2d 690), in those States where the legislature has not spoken on the subject, reviewing courts have decided the issue both ways. Some have found a lack of control where the facts show that an impaired driver pulls his vehicle off the travelled portions of the roadway and either takes the key out of the ignition or turns off the engine. (See, *e.g., State v. Zavala* (1983), 136 Ariz. 356, 666 P.2d 456; *State v. Bugger* (1971), 25 Utah 2d 404, 483 P.2d 442.) Still others, however, while recognizing that pulling off the road might be preferable to driving under the influence, have criticized the adoption of a "sleeping it off" policy, opting instead to stress the preventive nature of the implied consent statutes. See, *e.g., State v. Peterson* (Mont. 1989), 769 P.2d 1221; *State v. Thurmer*, 348 N.W.2d 776; *County of Milwaukee v. Proegler* (1980), 95 Wis. 2d 614, 291 N.W.2d 608.

The latter position is consistent with the one set forth in *People v.*

*Guynn* (1975), 33 Ill. App. 3d 736, 739, 338 N.E.2d 239, where the court stated:

> "We do not see anything which would imply a legislative intent or public policy to permit an intoxicated person to 'sleep it off' behind a wheel of a parked car, although that might be preferable to having him drive a car while intoxicated. A person behind the wheel of a parked car can readily move into a position where he can endanger other persons, property or vehicles."

The *Cummings* court, however, has since suggested that more flexibility be read into *Guynn*: "In those rare instances where the facts show that a defendant was furthering *** safer highways by voluntarily 'sleeping it off' in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not 'in actual physical control' of the vehicle." (176 Ill. App. 3d at 297.) We do not deem the present case to be one of those rare instances. Here, the trial court found, in addition to the other indicia of control, that defendant had driven the vehicle for approximately one hour before stopping to "sleep it off."

■ Finally, we briefly address two additional arguments raised in defendant's brief: (1) that the State failed to establish that he was under the influence of alcohol while in actual physical control of a vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)); and (2) that the arresting officer lacked reasonable grounds to believe that he was in actual physical control of a vehicle while under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b)(2)). These issues, however, were not raised at trial, and it is axiomatic that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872; *Beacham v. Lake Zurich Property Owners Association* (1988), 123 Ill. 2d 227, 526 N.E.2d 154.

In sum, what constitutes actual physical control is a question of fact to be decided by the trial court. Such decisions will not be overturned on appeal unless they are against the manifest weight of the evidence, and since the decision in the present case clearly does not fall within this category, we affirm.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.