THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRANCE LEMONS, Defendant-Appellant.

First District (4th Division)   No. 1—90—2689

Opinion filed September 30, 1993.—Rehearing denied November 18, 1993.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, William D. Carroll, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Terrance Lemons, was tried jointly with three codefendants in a jury trial in the circuit court of Cook County. Following trial, defendant was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9(a)(1)) and sentenced to a 50-year prison term. On appeal, defendant contends that (1) he was denied the right to confront his accuser and present evidence creating a reasonable doubt of guilt; (2) he should have been tried separately from his codefendants; (3) the prosecutor improperly shifted the burden of proof during closing arguments; (4) he was improperly precluded from presenting evidence concerning prior bad acts of two prosecution witnesses; and (5) his 50-year prison sentence is excessive and should be reduced.

We affirm.

On August 23, 1989, Steven Anderson, the victim, was shot and killed. The relevant events preceding the shooting concern the purchase of an automobile by the victim's brother, Jonathan Anderson (Anderson), from codefendant Eric Langham. Six months prior to the shooting, Langham offered to sell Anderson a car for $5,000. After further negotiations, Langham agreed to accept $3,500 and Anderson paid in two installments.

On August 22, 1989, Langham spoke with Anderson and accused him of telling others he cheated Langham out of his car. Langham demanded an additional $1,500. When Anderson refused, Langham threatened him with physical violence and repossession of the car. Anderson contacted Langham later that evening and the two agreed to meet at an area near Kilbourn and Cermak Avenues in Chicago. Anderson offered to give Langham the car back in return for his

money. Langham stated he wanted his car but would not return Anderson's money.

At approximately 11:30 p.m., Anderson was talking with the victim at 4726 West Arthington in Chicago. Anderson told the victim that he was having problems with Langham and would be meeting him later. Around that same time, Jarvis Evans arrived and saw Anderson and the victim talking. Moments later, the victim asked Evans to drive him somewhere. Rodney McNeal, who was also present, accompanied Evans and the victim to the area near Kilbourn and Cermak. Once there, Evans parked his car near a Chevrolet Blazer and waited for Anderson to arrive.

Anderson arrived minutes later accompanied by Robert Lee and Anthony Perteet. Anderson approached the Blazer and spoke to Michael Hampton, who was sitting in the driver's seat. Shortly thereafter, Langham arrived driving a motorcycle. Langham first drove near a pink car parked nearby and was handed something from a woman inside the car. Langham then moved near Anderson, who was standing in the street. Anderson and Langham spoke briefly just before Langham grabbed Anderson's neck, placed a gun to his head, and told everyone to move back. The victim moved towards his brother and a shotgun was fired from inside the Blazer. Anderson, Evans, McNeal, and Lee fell to the ground as continuous gunfire erupted.

At trial, Anderson testified that he saw defendant shoot the victim with a handgun. Evans and Lee testified that they each witnessed the victim get shot and observed several codefendants participate in the shooting. Evans and Lee also testified that neither they nor Anderson or McNeal had guns with them.

Also at trial, Dr. Robert Kirschner, the deputy chief medical examiner, testified that he performed the victim's autopsy, which revealed that the victim died from multiple gunshot wounds. Dr. Kirschner testified that he observed 14 shotgun injuries and approximately 200 pellet wounds to the victim's head and body.

Chicago police firearms expert Robert Smith testified that he examined the firearms evidence recovered from the murder scene. Smith stated that his examination revealed that at least six firearms were used in the shooting. Smith also examined a gun which was recovered from Anderson's car, but none of the recovered firearm evidence was fired from it.

After closing arguments, the trial court tendered instructions to the jury, which later found defendant guilty of first degree murder. Defendant was sentenced to 50 years in the Illinois Department of

Corrections. Defendant now appeals his conviction and resulting sentence.

Defendant first asserts that he was denied his right to present a defense and confront witnesses against him. Defendant claims the trial court impermissibly hampered his ability to present a defense by limiting his cross-examination of Jonathan Anderson. Defendant also contends that the trial court improperly denied his request to recall certain witnesses to establish that Anderson had not named or described him to police before September 27, 1989.

A trial court determines the latitude to be granted on cross-examination, and that decision will not be reversed absent a clear abuse of discretion resulting in manifest prejudice. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 194.) Similarly, the decision to recall a witness lies within the sound discretion of the trial court, whose decision will not be reversed unless it was manifestly prejudicial to the defendant. (*People v. Holmes* (1982), 104 Ill. App. 3d 1049, 1053.) Based on our review of the record, we cannot say that the trial court abused its discretion.

Prior to trial, the trial court granted defendant's motion *in limine* that the jury not be informed that on September 27, 1989, defendant was in custody on an unrelated charge when he was placed in a lineup and identified by Jonathan Anderson. Defendant was placed in the lineup because he was implicated in Steven Anderson's murder by a codefendant not a party to this trial. At trial, defendant argued that the State would be unable to prove that he participated in the murder. In support, defendant sought to inform the jury that Anderson failed to identify him as a participant in the murder until 35 days after the shooting.

During opening statements and cross-examination of Anderson, defense counsel sought to argue and elicit testimony concerning names Anderson gave to police following the shooting. In each instance, the prosecution objected and argued that defense counsel was violating defendant's own motion *in limine*. The trial court sustained the objections and reasoned that any inferences regarding the names given to police were improper since defendant's name had not been given. The trial court also ruled that the prosecution would be entitled to inform the jury as to how police obtained defendant's name.

Prior to resting his case, defendant sought to recall Anderson and Detectives Williams and Calabrese, seeking to establish that Anderson failed to mention anything about defendant to police until 35 days after the murder. Defendant argued he was unable to complete his defense. In denying defendant's request, the trial court recognized that

the evidence demonstrated that Anderson did not identify defendant until September 27, 1989, 35 days after the victim was killed. The trial court properly ruled that defendant's attempts to impeach Anderson's testimony by recalling certain witnesses were improper as Anderson admitted that he did not know defendant's name or nickname prior to trial.

■ Moreover, in response to defendant's argument at trial that he was precluded from presenting a defense, the trial court stated: "It is clear as I can possibly conceive of it being that [Anderson] did not make any identification and the State went to great pains to show the lineup that [sic] took place a month later." Moreover, defendant acknowledges that the jury heard this fact on at least eight separate occasions during the course of defendant's trial. We are not persuaded that defendant was prevented from presenting his defense or was prejudiced by the denial of his request to recall Anderson, Williams or Calabrese. Hence, the trial court did not abuse its discretion.

Second, defendant argues that he should have been tried separately from his codefendants because he was prejudiced by the admission of a statement made by codefendant Langham on August 22, 1989. At trial, Anderson testified that Langham threatened that if he failed to pay an additional $1,500, Langham would get his "boy to beat the s— out of [Anderson]" and repossess the car. Defendant claims that admission of this statement denied him a fair trial. Defendant also argues that, because the various defenses presented at trial were antagonistic, his counsel was ineffective for failing to make a timely motion for severance and that the trial court should have ordered a severance *sua sponte*.

Generally, where defendants are jointly indicted, they are to be jointly tried unless a separate trial is required to avoid prejudice to one defendant. (*People v. Byron* (1987), 116 Ill. 2d 81, 92.) Normally, a trial court grants a severance where one of two forms of prejudice has occurred. The first occurs where a defendant is implicated by a hearsay admission made by his codefendant. (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 835.) The second form of prejudice occurs when the defenses of the various defendants are antagonistic such that a severance is necessary to insure a fair trial. (*Lovelady*, 221 Ill. App. 3d at 836.) In the case at bar, while defendant claims he suffered both forms of prejudice, our review of the record convinces us that no prejudice occurred such that a severance was required.

■ A defendant's sixth amendment right to confront a witness against him is violated where the prosecution introduces an extrajudicial statement made by a nontestifying codefendant which implicates

the defendant. (*Bruton v. United States* (1968), 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479-80, 88 S. Ct. 1620, 1623; see also *People v. Johnson* (1989), 187 Ill. App. 3d 756, 763.) However, where such a statement is admitted into evidence, no prejudice occurs if the statement omits any reference to the defendant. (*Johnson*, 187 Ill. App. 3d at 763.) Here, the statement at issue makes no reference to defendant. Moreover, we agree with the State that defendant's argument that the word "boy" in the statement implicates him is based on pure speculation. Consequently, we hold that defendant suffered no prejudice from admission of the statement into evidence.

We also reject defendant's argument that his codefendants' defenses were antagonistic to his own. As we have already noted, defendant's defense at trial was that he was not present when the shooting occurred. Defendant's codefendants, however, proffered the defense of justifiable use of force. One codefendant defended on the theory that she was not present at the shooting. Defenses are considered antagonistic when "each defendant condemns the other but professes his own innocence." (*People v. Adams* (1988), 176 Ill. App. 3d 197, 200.) Defendant has failed to offer and we find no sufficient reason to believe that a true conflict existed between the various defenses presented at trial. We remain unconvinced that the trial court was under any obligation to order a severance and that defense counsel was ineffective for failing to move for severance.

■ Third, defendant contends he was denied due process because the prosecutor shifted the burden of proof during closing argument. The language cited by defendant as having denied him due process is as follows:

"[Prosecutor]: Under second degree murder the defense wants you to believe that the defendants were justified in killing Steven Anderson.

As the judge told you from Day 1, we have the burden of proof, of proving these defendants guilty beyond a reasonable doubt of first degree murder which we have done.

If the defense raises a defense such as justification, the defense has the burden of proving by a preponderance of the evidence that a mitigating factor exists ***."

Previously, the trial court instructed the jury concerning the elements of first degree murder which included proof that the killing was without lawful justification. Our examination of the cited language reveals that the prosecutor specifically reminded the jury that the State was required to prove defendant guilty of first degree murder. Moreover, in *People v. Davis* (1991), 221 Ill. App. 3d 1023, the

court held that requiring a defendant to prove a mitigating factor which is an affirmative defense rather than an element of the offense does not constitute a due process violation. (*Davis*, 221 Ill. App. 3d at 1026.) This, we believe, was the import of the prosecutor's argument. We are unpersuaded that the prosecutor's argument denied defendant his right to due process and, therefore, no new trial is warranted.

Fourth, defendant contends that a new trial is warranted because the trial court improperly precluded him from presenting evidence of prior bad acts committed by two prosecution witnesses. Prior to trial, two codefendants sought to present evidence of prior bad acts committed by Anderson and Robert Lee. The trial court granted the State's motion *in limine* to exclude this evidence.

■ As the State correctly notes, defendant failed to raise this issue in the trial court. Defendant did not join in any attempt to present evidence of the prior bad acts. Moreover, defendant did not object to the trial court's ruling on the motion *in limine*, nor did he raise the issue in his post-trial motion. It is well settled that issues not raised at the trial level are deemed waived and may not be considered for the first time on appeal. (*People v. Davis* (1990), 205 Ill. App. 3d 431, 438.) Consequently, the issue has been waived for purposes of appeal. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

■ Lastly, defendant claims, in his supplemental brief, that his 50-year sentence was excessive and should be reduced because the trial court failed to give due consideration to his rehabilitative potential. Defendant did not object at trial, nor did he raise any issue concerning his sentence in his post-trial motion. Likewise, defendant failed to argue this issue during his oral argument before this court. Hence, we agree with the State that defendant has waived any objections to his sentence. *People v. Williams* (1989), 180 Ill. App. 3d 294, 305.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.