NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion to

request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The official copy of the following opinion

will be published by the Supreme Court's Reporter of Decisions in the Official Reports advance

sheets following final action by the Court.

                                    

              Docket No. 80315--Agenda 23--September 1996.

     THE CITY OF NAPERVILLE, Appellee, v. RYAN M. WATSON, Appellant.

                    Opinion filed February 20, 1997.

                                    

     JUSTICE NICKELS delivered the opinion of the court:

     Defendant, Ryan M. Watson, was charged by the City of

Naperville (City) with driving while under the influence of alcohol

in violation of an ordinance (see Naperville Municipal Code §11--1-

-1) adopting the provisions of Illinois Vehicle Code (625 ILCS 5/1-

-100 et seq. (West 1994)) by reference. Following a jury trial,

defendant was found guilty and was sentenced to one year of court

supervision and a $250 fine. The appellate court affirmed

defendant's conviction (No. 2--94--0911 (unpublished order under

Supreme Court Rule 23)), and this court allowed defendant's

petition for leave to appeal (155 Ill. 2d R. 315). The issues

raised on appeal are: (1) whether defendant was shown to be in

"actual physical control" of his vehicle; and (2) whether defendant

was entitled to raise, and instruct the jury on, the affirmative

defense of necessity. We affirm.

                                BACKGROUND

     On June 3, 1993, at about 4:30 a.m., two Naperville police

officers discovered defendant asleep in his car. The car was parked

with its engine running in the parking lot of an apartment complex

in Naperville. Defendant was lying across the front seat with his

head on the passenger's side. The officers had difficulty rousing

defendant, and when they did, defendant appeared disoriented.

Defendant told the officers that he was sleeping in his car before

driving home because he had had too much to drink. The officers

testified that defendant's performance in field sobriety tests

indicated to them that he was under the influence of alcohol. At

that point defendant was arrested. Later, defendant submitted to a

breathalyzer test which indicated an alcohol concentration of 0.18.

     Defendant testified that at about 5 p.m. on June 2, 1993, he

picked up his girlfriend, Danielle, and drove her to a party at his

home in Bolingbrook. At the time, Danielle was living with a friend

in Naperville. Defendant had been drinking, and when Danielle was

ready to leave the party, he explained to her that he could not

drive her home because he had had too much to drink. Instead,

Danielle drove defendant's car to her friend's apartment in

Naperville and defendant accompanied her as a passenger. They

arrived at about 12:30 a.m. Defendant testified that he planned to

stay with Danielle at her friend's apartment and that there was "no

way" that he would drive back to Bolingbrook. Instead of staying in

the apartment, however, defendant remained in his car in the

apartment complex's parking lot. Danielle's testimony corroborated

defendant's account of these events. The trial court barred the

defense from introducing evidence regarding the reason defendant

did not stay in the apartment. The defense sought to offer

testimony that Danielle's friend's mother would not allow defendant

to stay in the apartment.

     Defendant additionally testified that it was very cold in the

car and at about 2:30 a.m. he went back to the apartment and asked

for a coat or a blanket. Defendant was given a coat, and when he

returned to his car he turned on the engine so he could run the

heater. Defendant then went to sleep in the car. The parties

stipulated that defendant did not actually drive his car during the

evening of June 2 or the morning of June 3.

                                 ANALYSIS

     Section 11--501(a) of the Illinois Vehicle Code provides in

pertinent part that a person shall not "drive or be in actual

physical control of any vehicle" while the alcohol concentration of

his or her blood or breath is 0.10 or more or the person is under

the influence of alcohol. 625 ILCS 5/11--501(a) (West 1994). While

it is undisputed that defendant did not drive his vehicle during

the relevant time frame, the City prosecuted defendant under the

theory that he was in actual physical control of the vehicle.

Defendant argues that the evidence conclusively shows that he had

no intention of driving and only used the vehicle as stationary

shelter where he could "sleep off" the effects of the alcohol he

had consumed. Defendant maintains that under these circumstances he

was not in "actual physical control" of the vehicle and his

conviction must be reversed.

     A person need not drive to be in actual physical control of a

vehicle, nor is the person's intent to put the car in motion

relevant to the determination of actual physical control. See

People v. Davis, 205 Ill. App. 3d 431, 435 (1990). The issue of

actual physical control is determined on a case-by-case basis

giving consideration to factors such as whether the motorist is

positioned in the driver's seat of the vehicle, has possession of

the ignition key and has the physical capability of starting the

engine and moving the vehicle. See Davis, 205 Ill. App. 3d at 435;

People v. Heimann, 142 Ill. App. 3d 197, 199 (1986). In a number of

cases, individuals discovered sleeping in vehicles have been found

to be in actual physical control. See Davis, 205 Ill. App. 3d 431;

People v. Scapes, 247 Ill. App. 3d 848 (1993); People v. Cummings,

176 Ill. App. 3d 293 (1988); People v. Brown, 175 Ill. App. 3d 676

(1988); People v. Karjala, 172 Ill. App. 3d 871 (1988).

     Some controversy has arisen as to how to treat the individual

who recognizes that alcohol consumption has impaired his ability to

drive and who chooses to "sleep it off" in a parked vehicle. In

People v. Guynn, 33 Ill. App. 3d 736, 739 (1975), the court stated,

"[w]e do not see anything which would imply a legislative intent or

public policy to permit an intoxicated person to `sleep it off'

behind the wheel of a parked car, although that might be preferable

to having him drive a car while intoxicated. A person behind the

wheel of a parked car can readily move into a position where he can

endanger other persons, property or vehicles." Other Illinois

decisions have likewise refused to recognize the defense of

"sleeping it off." See People v. Brown, 175 Ill. App. 3d 676, 679

(1988); People v. Barlow, 163 Ill. App. 3d 281, 287 (1987); see

also People v. Karjala, 172 Ill. App. 3d 871 (1988).

     However, dicta in People v. Cummings, 176 Ill. App. 3d 293

(1988), advocated a different rule. In Cummings, the defendant's

car was found in a ditch with the defendant passed out behind the

steering wheel. The defendant testified that he began drinking only

after his car had become stuck in the ditch. In the course of its

analysis, the Cummings court expressed its concern that "through

time and expansion by subsequent court rulings, Guynn may have

become counterproductive to society's goal of providing safe

highways." Cummings, 176 Ill. App. 3d at 296. The court explained:

               "For the intoxicated person caught between using his

          vehicle for shelter until he is sober or using it to

          drive home, Guynn encourages him to attempt to quickly

          drive home, rather than to sleep it off in the car, where

          he will be a beacon to police.

               We believe it would be preferable, and in line with

          legislative intent and social policy, to read more

          flexibility into Guynn. In those rare instances where the

          facts show that a defendant was furthering the goal of

          safer highways by voluntarily `sleeping it off' in his

          vehicle, and that he had no intent of moving the vehicle,

          trial courts should be allowed to find that the defendant

          was not in `actual physical control' of the vehicle for

          purposes of section 11--501." Cummings, 176 Ill. App. 3d

          at 296-97.

See also People v. Barlow, 163 Ill. App. 3d 281, 288 (1987) (Karns,

P.J., dissenting) ("contrary to the statement in [Guynn], I see

nothing wrong with defendant getting into his truck to `sleep it

off' ").

     Nonetheless the Cummings court affirmed the defendant's

conviction, concluding that the case was not one of the "rare

instances" it had described, "but instead involve[d] the frequently

found circumstance of an intoxicated defendant sleeping in his car

after driving it into a ditch." Cummings, 176 Ill. App. 3d at 297.

The court noted that the trier of fact was not obligated to credit

the defendant's "good-citizen tale" of how he came to be drunk in

the ditch. Cummings, 176 Ill. App. 3d at 297.

     Relying on Cummings, defendant urges us to hold that

intoxicated individuals who voluntarily choose to sleep off the

effects of alcohol in a parked vehicle may do so without fear of

prosecution. We are unpersuaded by Cummings' reasoning and

defendant's argument. The term "actual physical control" in section

11--501 is unqualified by any language suggesting that the

accused's purpose in occupying a vehicle is germane to criminal

responsibility. Courts in other jurisdictions have emphasized the

preventive nature of statutes proscribing actual physical control

by those under the influence of alcohol. It has been stated that

the purpose of such statutes is to discourage intoxicated persons

from entering motor vehicles except as passengers. In re Suspension

of the Driver's License of Vogt, 117 Idaho 545, 546, 789 P.2d 1136,

1137 (1990); Buck v. North Dakota State Highway Commissioner, 425

N.W.2d 370, 373 (N.D. 1988). "An intoxicated individual who gets

into his vehicle to sleep poses a threat of immediate operation of

his vehicle at any time while still intoxicated." Buck, 425 N.W.2d

at 373; see also Stevenson v. City of Falls Church, 243 Va. 434,

440, 416 S.E.2d 435, 439 (1992) (Compton, J., dissenting, joined by

Carrico and Hassell, JJ.) ("Ordinary experience tells us that one

in a drunken stupor in the driver's seat of a vehicle is likely to

arouse abruptly, engage the motive power of the vehicle, and roar

away imperiling the lives of innocent citizens"). In State v.

Lawrence, 849 S.W.2d 761 (Tenn. 1993), the court stated:

               "We agree with the observation that `[a] motor

          vehicle is recognized in the law as a dangerous

          instrumentality when in the control of a sober person; in

          the control of a drunk, the dangerous instrumentality

          becomes lethal. Therefore *** the court [should

          interpret] the drunk driving statute in a way that

          [keeps] drunks from behind the steering wheels of motor

          vehicles, even when the drunk need[s] to "sleep it

          off." ' " Lawrence, 849 S.W.2d at 765, quoting Stevenson

          v. City of Falls Church, 243 Va. 434, 440, 416 S.E.2d

          435, 439 (1992) (Compton, J., dissenting, joined by

          Carrico and Hassell, JJ.).

     The legislature's use of the broad, unqualified phrase "actual

physical control" in section 11--501 reflects a legislative public

policy of encouraging those who plan to drink at a party or tavern

to arrange lodging or safe transportation home before they set out.

A person may embark upon an evening of drinking with the intention

of sleeping in his or her car, but the actual decision whether to

do so will be made at a time when the person's judgment is impaired

by alcohol. While some courts have embraced a construction of

"actual physical control" permitting the use of a vehicle for

stationary shelter (see, e.g., State v. Holloran, 669 A.2d 800, 801

(N.H. 1995); Atkinson v. State, 331 Md. 199, 216, 627 A.2d 1019,

1027 (1993)), for the reasons set forth above, we decline to adopt

such a construction.

     The evidence in the case at bar is sufficient to support the

jury's determination that defendant was in actual physical control

of his vehicle. It is no defense that defendant may have intended

only to use the vehicle for shelter while achieving sobriety.

     Defendant also argues that the trial court committed

reversible error by excluding evidence relevant to the defense of

necessity and by refusing to instruct the jury on that defense

theory. We need not address the argument, as it is waived. Supreme

Court Rule 315(b)(3) states that a petition for leave to appeal

shall contain "a statement of the points relied upon for reversal

of the judgment of the Appellate Court." 155 Ill. 2d R. 315(b)(3).

Rule 315(b)(5) states that the petition shall contain "a short

argument *** stating *** why the decision of the Appellate Court

should be reversed or modified." 155 Ill. 2d R. 315(b)(5). In the

case at bar, the "points relied on for reversal" and "argument"

sections of defendant's petition for leave to appeal focused

exclusively on the question of whether defendant was shown to be in

actual physical control of his vehicle; defendant did not raise any

issue involving the defense of necessity. A party's failure to

raise an argument in the petition for leave to appeal may be deemed

a waiver of that argument. Federal Deposit Insurance Corp. v.

O'Malley, 163 Ill. 2d 130, 154 (1994). We therefore decline to

address defendant's argument regarding the defense of necessity.

                                CONCLUSION

     For the foregoing reasons, the judgment of the appellate court

is affirmed.

Affirmed.

                                                                         

     JUSTICE FREEMAN, dissenting:

     Defendant contends the trial court erroneously barred him from

asserting the affirmative defense of necessity. I disagree with the

majority's refusal to address this contention. Further, I agree

with defendant that he had the right to present the necessity

defense to the jury. Accordingly, I dissent.

     Initially, I agree with the majority that Illinois Vehicle

Code section 11--501(a) (625 ILCS 5/11--501(a) (West 1994)) does

not excuse an intoxicated person from "sleeping it off" in a parked

vehicle. The majority correctly interprets section 11--501(a),

based on the provision's plain language, supported by the rationale

that an intoxicated person who is "sleeping it off" can easily

start the vehicle and endanger life and property. Slip op. at 2-6.

                                  Waiver

     Although I agree with the majority's above-mentioned

interpretation of the Illinois Vehicle Code, I disagree with the

majority's application of the waiver doctrine to the issue of the

necessity defense. The appellate court addressed the issue in its

unpublished order. In this court, both sides fully discussed the

issue in their briefs and during oral argument. However, the

majority concludes that defendant waived the issue because he

failed to include it in his petition for leave to appeal to this

court. Slip op. at 6.

     It is quite settled that the waiver rule is a principle of

administrative convenience, an admonition to the parties; it is not

a jurisdictional requirement or any limitation upon the

jurisdiction of a reviewing court. In re C.R.H., 163 Ill. 2d 263,

274 (1994); Dineen v. City of Chicago, 125 Ill. 2d 248, 265-66

(1988). "Thus, a party's failure to assert the argument in the

petition for leave to appeal does not preclude consideration of the

question on review, and this court has previously considered

matters that an appellant omitted from its petition for leave to

appeal." Dineen, 125 Ill. 2d at 266.

     It may seem that a reviewing court is simply vested with

unprincipled "discretion," which the court may or may not exercise

as it pleases. However, a reviewing court invokes its authority to

override considerations of waiver based on the court's

responsibility for a just result and to maintain a sound and

uniform body of precedent. People v. Hudson, 157 Ill. 2d 401, 425

(1993); Hux v. Raben, 38 Ill. 2d 223, 224-25 (1967).

     In the present case, defendant contends that the trial court

committed reversible error by excluding defendant's proffered

evidence relevant to the defense of necessity, and by refusing to

instruct the jury on that defense. It is doubtful that a jury trial

can produce "a just result" if incomplete or inaccurate

instructions are used. See, e.g., People v. Newbolds, 204 Ill. App.

3d 952, 954-55 (1990). The function of jury instructions is to

guide the jury in its deliberations and to help it reach a proper

verdict through the application of correct legal principles

according to the law and the evidence. People v. Hester, 131 Ill.

2d 91, 98 (1989). Appropriate jury instructions are essential to a

defendant's right to a fair trial. People v. Comer, 78 Ill. App. 3d

914, 916 (1979); accord 75A Am. Jur. 2d Trial §1079, at 610 (1991);

23A C.J.S. Criminal Law §1302, at 207 (1989). Also, there is a

"sound and uniform body of precedent" providing that a defendant is

entitled to the benefit of any defense shown by the entire

evidence. People v. Bratcher, 63 Ill. 2d 534, 540 (1976); People v.

Kalpak, 10 Ill. 2d 411, 424 (1957). I conclude that these rights

override considerations of waiver in this case.

                             Necessity Defense

     Turning to the merits, I agree with defendant that he had the

right to present the defense of necessity to the jury. The record

shows that prior to trial, the trial court granted the City's

motion in limine to bar defense testimony concerning defendant's

intention or reason for sleeping in his vehicle. In support of his

motion to reconsider the ruling, defendant made the following offer

of proof. Danielle, defendant's girlfriend, was living in the

apartment of her friend and her friend's mother. The mother of

Danielle's friend would not allow defendant to stay in their

apartment. Defendant had only 25 cents, had no place to go, and had

no other choice but to sleep in his vehicle in the apartment

complex's parking lot. The trial court denied defendant's motion to

reconsider.

     Motions in limine are encouraged in criminal cases to exclude

collateral or extraneous matters. However, the motion should be

used with caution so as not to deprive a defendant of a legally

viable defense. A trial court must be certain that the grant of a

motion in limine will not unduly restrict the opposing party's

case. A reviewing court will not reverse a trial court's grant or

denial of a motion in limine absent an abuse of discretion. People

v. Berquist, 239 Ill. App. 3d 906, 908 (1993); People v. Downey,

162 Ill. App. 3d 322, 334 (1987).

     In the present case, the trial court's grant of the City's

motion in limine deprived defendant of a legally viable defense--

the affirmative defense of necessity. A defendant is entitled to

the benefit of any defense shown by the entire evidence, and has

the right to have the jury instructed as to the law applicable to

any state of facts which the jury might legitimately find to have

been proved from the evidence. Kalpak, 10 Ill. 2d at 424. A defen-

dant is so entitled even if the evidence on which such defense is

based is inconsistent with the defendant's own testimony (People v.

Janik, 127 Ill. 2d 390, 398 (1989); Bratcher, 63 Ill. 2d at 540),

or of doubtful quality (People v. Lyda, 190 Ill. App. 3d 540, 544-

45 (1989)). If the State's evidence does not raise the issue of the

affirmative defense, a defendant, to raise the issue, must present

"some evidence" thereon. People v. Unger, 66 Ill. 2d 333, 338

(1977); 720 ILCS 5/3--2(a) (West 1994).

     The trial court may not weigh the evidence in deciding whether

an issue has been raised entitling a defendant to an instruction.

Lyda, 190 Ill. App. 3d at 544; People v. Sweeney, 114 Ill. App. 2d

81, 89 (1969). The evidence supporting the affirmative defense must

be sufficient to raise an issue of fact for the jury, creating a

reasonable doubt as to defendant's guilt. People v. Redmond, 59

Ill. 2d 328, 337-38 (1974). In other words, unless the evidence

before the trial court is so clear and convincing as to permit the

court to find as a matter of law that there is no affirmative

defense, the factual issue must be determined by the jury with

proper instruction on the applicable law. People v. Larry, 144 Ill.

App. 3d 669, 676 (1986); People v. Adcock, 29 Ill. App. 3d 917, 919

(1975).

     The Criminal Code of 1961 defines necessity as follows:

               "§7--13. Necessity. Conduct which would otherwise be

          an offense is justifiable by reason of necessity if the

          accused was without blame in occasioning or developing

          the situation and reasonably believed such conduct was

          necessary to avoid a public or private injury greater

          than the injury which might reasonably result from his

          own conduct." 720 ILCS 5/7--13 (West 1994).

Necessity is an affirmative defense. 720 ILCS 5/7--14 (West 1994).

"This defense is viewed as involving the choice between two

admitted evils where other optional courses of action are

unavailable [citations], and the conduct chosen must promote some

higher value than the value of literal compliance with the law

[citation]." Janik, 127 Ill. 2d at 399.

     I conclude that the entire evidence, which includes

defendant's offer of proof, entitled defendant to raise the

affirmative defense of necessity. The following evidence was

undisputed. Defendant became intoxicated at a party at his home.

Defendant knew he was intoxicated; he further knew that he should

not and would not drive. However, Danielle did not want to spend

the night at defendant's home; rather, she wanted to return to her

friend's apartment. Defendant did not loan Danielle his car because

he needed it. For whatever reason, Danielle drove defendant to the

apartment in his car. Defendant and Danielle planned for defendant

to spend the night with Danielle at her friend's apartment.

However, her friend's mother would not allow defendant to stay in

the apartment. Defendant never drove his car that night and did not

intend to do so while intoxicated. For whatever reason, defendant

had only 25 cents, had no other place to go, and had no available

means to return home. Consequently, defendant slept in his car in

the apartment complex's parking lot.

     The appellate court held that the trial court did not err in

barring defendant from asserting the necessity defense. The

appellate court's analysis of this issue was erroneous. The court

concluded that defendant was not without blame in occasioning the

situation because: (1) he voluntarily became intoxicated that

night, and (2) "[i]nstead of remaining at his house and allowing

his girlfriend to take his car home, he went with her in an

intoxicated state hoping to spend the night at her apartment."

However, defendant was drinking in his home with no intention of

driving that night. Additionally, the appellate court ignored

defendant's testimony that he simply needed his car.

     The appellate court also declared without explanation that

"there were other reasonable alternatives to defendant sleeping in

his car with the engine running while he was intoxicated." However,

the appellate court ignored the fact that defendant presented some

evidence that he had no reasonable alternative.

     Of course, the jury could have doubted defendant's evidence.

However, it is clear that defendant presented some evidence to

support the defense of necessity. No other options being available,

defendant chose the lesser of two evils by sleeping in his car in

a parking lot, rather than driving it and endangering persons and

property. This evidence was sufficient to justify the raising of

the defense and to have the jury consider it with appropriate

instructions. See Unger, 66 Ill. 2d at 341; People v. Blake, 168

Ill. App. 3d 581, 586-87 (1988).

     For the foregoing reasons, I would reverse the judgments of

the appellate court and the circuit court of Du Page County, and

remand the cause for a new trial. Accordingly, I dissent.

     JUSTICE McMORROW joins in this dissent.