# United States Court of Appeals

## For the First Circuit

No. 05-1739

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM R. MCFARLAND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,

Bowman,* Senior Circuit Judge,

and Howard, Circuit Judge.

David W. Bate on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellee.

April 12, 2006

---

*Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

**HOWARD**, <u>Circuit Judge</u>. On the afternoon of October 10, 2004, two park rangers approached a stationary pickup truck in a parking lot inside Acadia National Park. Looking inside, they observed William McFarland sitting in the driver's seat with his upper body "slumped over into the middle of the vehicle." A key was in the ignition and the front hood was warm. The rangers had trouble arousing the slumbering McFarland, but once awake, he produced the vehicle's registration. When asked what he was doing, McFarland responded that he had merely been taking a nap. Smelling an alcoholic beverage on his breath, the rangers asked McFarland to step out of the truck. Upon receiving McFarland's consent, they searched the truck and discovered, among other things, a bag of marijuana and two largely consumed bottles of hard alcohol. All of the drugs and alcohol had been within McFarland's reach. A wobbly McFarland failed three field sobriety tests, and a subsequent intoxilyzer test confirmed that his blood-alcohol level was 0.31 percent.

McFarland was charged with being "knowingly and willfully in actual physical control of a motor vehicle in a park area . . . while he had a blood-alcohol level in excess of 0.08% and while he was under the influence of alcohol to a degree that rendered [him] incapable of safe operation of said vehicle," <u>see</u> 36 C.F.R. §

4.23(a), a Class B Misdemeanor.[1]  Pursuant to 18 U.S.C. § 3401, a trial was held before a magistrate judge, who concluded that the government had proven, beyond a reasonable doubt, that McFarland had been in actual physical control of the truck while he was intoxicated.  The magistrate judge inferred, based on the warmth of the hood, that the truck had been operated shortly before the rangers arrived.  Combining that inference with the facts that McFarland had been found seated behind the wheel of the truck with the key in the ignition, the magistrate judge entered judgment against McFarland.

The district court affirmed.  See United States v. McFarland, 369 F. Supp. 2d 54 (D. Me. 2005).[2]  Applying the same standard of review we would apply to a district court's conviction, see 18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2)(D), the court concluded that sufficient evidence was presented to convict McFarland of being in actual physical control of his truck while intoxicated, and that McFarland had fair notice that his actions

_____

[1]Although 36 C.F.R. § 4.23(a) does not appear to require a mens rea showing, the government charged that McFarland's violation was done "knowingly" and "willfully."  Because McFarland was charged under this higher standard the sufficiency of the evidence is assessed accordingly.  See United States v. Zanghi, 189 F.3d 71, 79 (1st Cir. 1999) ("The terms of an indictment can raise the bar of proof for the government to a higher level than the bare minimum required by the terms of a criminal statute.").

[2]McFarland was also convicted of possessing marijuana in a national park, see 36 C.F.R. § 2.35(b)(2), but he has not appealed that conviction.

were criminal. McFarland, 369 F. Supp. 2d at 60-61. McFarland now appeals to this court. See United States v. Forcellati, 610 F.2d 25, 28 (1st Cir. 1979) (confirming our jurisdiction to review the district court's appellate decision).

Our standard for reviewing the record is the same as that applied by the district court. See United States v. Bursey, 416 F.3d 301, 305-06 (4th Cir. 2005). We will not reverse factual findings absent clear error, but legal questions, such as interpretation of the regulation and sufficiency of the evidence, are considered de novo. See United States v. Camilo, 71 F.3d 984, 986 (1st Cir. 1995). In reviewing a sufficiency challenge, we evaluate the evidence in the light most favorable to the government, accepting all "reasonable evidentiary inferences" consonant with the verdict, and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Grace, 367 F.3d 29, 34 (1st Cir. 2004) (quotations omitted). Notwithstanding the high burden of proof, the government's evidence "may be entirely circumstantial, and need not exclude every hypothesis of innocence." United States v. Meléndez-Torres, 420 F.3d 45, 49 (1st Cir. 2005) (quotations omitted).

McFarland advances three arguments on appeal. First, he challenges the lower courts' interpretation of the regulation. He argues, essentially, that a sleeping person can never be in

-4-

"actual" physical control of a vehicle. Second, he argues that the government failed to present sufficient evidence to establish that he was "knowingly and willfully in actual physical control" of the vehicle while intoxicated. Finally, he argues that the rule of lenity should apply because the term "actual physical control" failed to give him sufficient warning that his conduct was illegal.

There is little case law concerning 36 C.F.R. § 4.23, and only one court opinion has discussed the meaning of "actual physical control." See United States v. Coleman, 750 F. Supp. 191, 194-95 (W.D. Va. 1990). McFarland advocates a narrow interpretation of the regulation. Although he concedes that a person need not be driving the vehicle to be in actual physical control of it, he contends that a sleeping person cannot exercise such control. He cites to a line of state cases -- interpreting statutes analogous to the regulation at issue here -- that have held that a person sleeping in a vehicle is more likely using the vehicle for "shelter" than for transportation. See, e.g., Atkinson v. Maryland, 627 A.2d 1019, 1028-29 (Md. 1993); Harris v. Kentucky, 709 S.W.2d 846, 847 (Ky. Ct. App. 1986). He would have us reject a contrary line of state cases that have more expansively construed the same language. See, e.g., South Dakota v. Kitchens, 498 N.W.2d 649, 652 (S.D. 1993); Illinois v. Davis, 562 N.E.2d 1152, 1155-57 (Ill. App. Ct. 1990). The latter line of cases is grounded on the idea that the intended purpose of an intoxicated driver statute is

to keep alcohol-impaired drivers off the public roads, and that an intoxicated, albeit sleeping, vehicle occupant presents a danger to the public given the potential that he could awaken and resume driving in an instant.  See, e.g., Kitchens, 498 N.W.2d at 652; Davis, 562 N.E.2d at 1156-57.[3]

We need not choose between these competing lines of cases here because McFarland is the paradigmatic "trout in the milk." Henry D. Thoreau, Journal, Nov. 11, 1850.  Given the evidence, the magistrate judge as fact finder was free to infer how McFarland came to be inebriated and asleep in the front seat of his pickup truck with the key in the ignition.[4]  The logical and obvious answer is that he placed himself in that position.  Logic permitted the magistrate judge to conclude that McFarland was awake and acting voluntarily when he entered his truck, when he consumed the alcohol, and when he placed the key in the ignition.  Although it is unresolved whether McFarland became intoxicated within or without the truck, that question is of no consequence.  Because

---

[3]The government contends that the cases McFarland cites are inapposite because they involved statutes forbidding only "operation" of a motor vehicle.  Indeed, unlike 36 C.F.R. § 4.23, some of the statutes use "actual physical control" as a conjunctive with, or as a part of the definition of, "operation."  But because we do not view the various state approaches as necessary to our analysis, we bypass a lengthy discussion of those cases.

[4]The evidence did not suggest any alternative explanation, such as that a third-party or parties were present or were potentially responsible for McFarland's intoxication, his placement in the truck, or the placement of his keys in the ignition.

there is no evidence to contradict the inference that McFarland placed himself at the scene, the magistrate judge reasonably could have concluded that, at some point before he fell asleep, McFarland was both drunk and awake, sitting in the front of his truck, with the key in the ignition.[5]  See United States v. Escobar-de Jesus, 187 F.3d 148, 175-76 (1st Cir. 1999) (a factfinder may make inferences in light of "human experience").

That is all the regulation requires.  If "actual physical control" is to mean anything short of "operation," it must exist when the vehicle's owner is conscious and seated in the driver's seat with the key in the ignition.  See Coleman, 750 F. Supp. at 194 (finding, on similar facts, that the defendant had "actual physical control" of the vehicle); accord Bodner v. Delaware, 752 A.2d 1169, 1173 (Del. 2000) ("Insofar as 'physical control' refers to something other than 'driving' or 'operating,' . . . [it] is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to

_____

[5]One line in the appellant's brief suggests that McFarland may have gone to sleep after consuming the alcoholic beverage and before he became intoxicated.  Whatever force this suggestion might have if it had been sufficiently argued, the evidence, as we have noted, is to the contrary.  The hood of the truck was still warm, suggesting recent operation, and, when tested later, McFarland's blood alcohol content was .31%.  While McFarland's counsel suggested at oral argument that the test may have shown a rising blood alcohol content, the totality of the evidence before the magistrate judge easily supported an inference of intoxication prior to McFarland's falling asleep.

-7-

the operator, to others, or to property.") (quoting <u>Minnesota</u> v. <u>Starfield</u>, 481 N.W.2d 834, 837 (Minn. 1992)). Indeed, McFarland's reply brief concedes that a "better description of 'actual physical control'" would include "an owner in the driver's seat who is awake." The government therefore presented sufficient evidence to support McFarland's conviction.

We also reject McFarland's arguments that the government failed to produce sufficient evidence of his state of mind, and that "actual physical control" has an ambiguous application in his case. In the absence of any alternative explanation, the evidence that McFarland was found drunk and asleep behind the wheel of his truck with the key in the ignition was also sufficient to support a finding that he knowingly and willfully placed himself in that position. <u>See</u> <u>United States</u> v. <u>Bay State Ambulance and Hosp. Rental Serv., Inc.</u>, 874 F.2d 20, 33 (1st Cir. 1989) (defining "knowingly" and "willfully"). Further, we view the regulation as unambiguously applying to an intoxicated but conscious person who has freely chosen to sit behind the wheel of a vehicle with the key in the ignition. <u>See</u> <u>Salinas</u> v. <u>United States</u>, 522 U.S. 52, 66 (1997) ("The rule [of lenity] does not apply when a statute is unambiguous.").

**<u>Affirmed.</u>**