# United States Court of Appeals
## For the First Circuit

No. 12-1842

UNITED STATES,

Appellee,

v.

RONALD J. STRONG,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. James R. Muirhead, U.S. Magistrate Judge]
[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Katherine C. Essington for appellant.
Craig M. Wolff, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

July 19, 2013

**LYNCH, Chief Judge**.  This is an appeal from a criminal misdemeanor conviction of a defendant convicted of badly soiling a courthouse bathroom.  Following a bench trial, a United States magistrate judge found the defendant, Ronald Strong, guilty of willfully damaging federal property, 41 C.F.R. § 102-74.380(b), creating a hazard on federal property, id. § 102-74.380(d), and creating a nuisance on federal property, id. § 102-74.390(a).  He was sentenced to seven days in jail.  The defendant appealed to the district court, which, in a comprehensive oral decision, affirmed the conviction.

Strong argues on appeal that his conviction must be reversed because the regulations he was charged with violating had not been posted outside the courthouse entrance but, rather, inside at the clerk's office.  He argues the outside posting was required by statute, 40 U.S.C. § 1315(c)(1), and by a General Services Administration (GSA) regulation, 41 C.F.R. § 102-74.365.  He then links non-compliance with the regulation to the criminal prohibitions, arguing that no crime is committed absent outside posting.  He also challenges the sufficiency of the evidence as to the mental state required for his conviction.  We affirm.

Strong is wrong on all points.  The statute merely requires posting of the regulations he violated in a conspicuous place on the property.  They were so posted: they were conspicuously located on the wall next to the clerk's office door.

-2-

Strong had passed by those regulations a number of times and so notice was plainly posted as to him. While it is true that a GSA regulation both directed occupant agencies to post notice about the rules governing the building and then specified that the notice should be at each public entrance, nothing in the regulation says that imperfect compliance with the exterior posting requirement nullifies a conviction for violating the prohibition. The Secretary certainly has not said that those who violate the criminal regulations get a free pass because of a bureaucratic mix-up. The record is also more than sufficient to establish that Strong had the intent needed for conviction.

I.

In evaluating a claim that the evidence was insufficient to support a conviction, we consider "the facts in the light most favorable to the verdict." United States v. Poulin, 631 F.3d 17, 18 (1st Cir. 2011).

The events in this case took place at the Edward T. Gignoux U.S. Courthouse in Portland, Maine on May 24, 2011. The substantive criminal regulations Strong was charged with violating were posted on a wall immediately to the right of the entrance to the clerk's office, although they were not posted at the courthouse's front entrance. The plaque containing the notice was framed and in bold letters was entitled "Rules and Regulations Governing Conduct on Federal Property." Moreover, at the bottom of

the plaque the word "WARNING" in bold, all-capital letters and large font appeared. Anyone entering the clerk's office would necessarily pass within inches of the posted regulations. Strong had passed by the regulations on many occasions when he had come to the clerk's office to file documents in a civil case. He had hand-filed numerous documents with the district court between October 2010 and April 2011. Strong stipulated to the fact of these visits to the clerk's office before April 2011.

On May 24, 2011, Strong arrived at the courthouse around 11:30 a.m. As he was about to pass through the metal detector near the entrance, Strong told the court security officer (CSO), Franklin Holcomb, that he needed to use the bathroom. Holcomb responded that Strong could do so as soon as he was screened. As Strong passed through the metal detector, Strong told Holcomb that he was defecating in his pants. Holcomb then escorted Strong to the first floor men's room, which was about seventy-five feet away. Holcomb remained outside the restroom door until two Deputy U.S. Marshals arrived. They arrived under a previously established protocol as to Strong, implemented because there was an ongoing improper communication case involving Strong and a court employee. When Strong left the bathroom five or ten minutes later, the deputies escorted him to the clerk's office. Strong said nothing about the condition of the restroom to the deputies. Walking again past the notice of the regulations outside the clerk's office,

Strong left the courthouse five or ten minutes after that without any further incident.

No one used that men's restroom for approximately fifteen minutes after Strong left the courthouse. At that point, a male law enforcement officer went to use it, but could not because of its condition. The officer told one of the CSOs that someone had soiled the first floor men's room and asked for the CSOs to summon a cleaning person, which the CSOs did.

The supervisor of the courthouse's cleaning company, Christina Mason, arrived to clean the restroom after receiving a call requesting that it be cleaned. She smelled feces from the hallway, and when she opened the door she could not enter the restroom because feces were on the floor where one would need to step to get inside. The restroom was unusable because it was so soiled. She saw that seventy-five percent of the floor was covered in feces, in chunks. She also saw feces smeared in spots on several walls in different areas. In fact, some of the feces were smeared more than two feet up on the walls. Feces were smeared on the paper towel and toilet paper dispensers, on the toilet paper itself, and on part of the toilet seat and the left side of the toilet bowl. There was also urine in the toilet, which had not been flushed; no feces were inside the liquid in the bowl. Mason testified that the feces were not only all over the bathroom but were "smear[ed] in spots," and not splattered. Strong's plaid blue

boxers, which were covered in feces, were found by Mason draped over the wastebasket where Strong admits he placed them because they were "destroyed."

The state of the bathroom was so bad that Mason, who had fourteen years' experience at the courthouse and training in cleaning up bodily substances, was initially at a loss for how to clean the restroom. She devised a plan and first used paper towels and disinfectant to remove the feces from the floor. She then cleaned the restroom three times with a bleach and water solution, and discarded the soiled underpants, the potentially soiled rug that had been outside the restroom, and the clothes she had been wearing using a biohazard bag.

On May 27, 2011, the government charged Strong in a three-count misdemeanor information with willfully damaging federal property, in violation of 41 C.F.R. § 102-74.380(b), creating a hazard on federal property, in violation of 41 C.F.R. § 102-74.380(d), and creating a nuisance on federal property, in violation of 41 C.F.R. § 102-74.390(a). Strong pled not guilty. On September 7, 2011, Strong's counsel filed a motion to dismiss, arguing that compliance with 41 C.F.R. § 102-74.365, which requires posting of notice of the regulations Strong was convicted under at the building entrance, was a prerequisite to prosecution and that the government had failed to meet that requirement. We detail the

argument below. Suffice it to say the magistrate judge (from New Hampshire) denied Strong's motion.

At trial, CSO Holcomb, Deputy U.S. Marshal Sean Joyce, and cleaning supervisor Christina Mason testified as to the facts previously described.[1] The defendant offered his own testimony and that of Deputy Clerk Robert Allen. Strong's testimony was essentially that he had an accident and he had done nothing more than try to clean himself up in the restroom. He also testified that he did not notice the feces on the wall or the extent to which feces covered the floor. As to Mason's contrary description, Strong accused Mason of lying in her testimony about the condition of the restroom. The magistrate judge found Mason to be credible and made no determination about Strong's credibility.

The magistrate judge found Strong guilty on all three counts. The court stated:

> I find that Miss Mason is sufficiently credible to establish guilt beyond a reasonable doubt with respect to each of the three counts.
> The defendant may very well have accidentally put some on the floor or on the walls as he tried to clean up, but it was smeared over 75 percent of the floor, on two walls at several different locations, and that indicates to me that in fact it was a willful act. He also did not report it to anybody,

---

[1] The defendant moved for a judgment of acquittal after the close of the government's case on the ground that the government failed to show any intent. The court denied the motion, with one exception not relevant here. The defendant did not make a renewed motion for judgment of acquittal after the close of his own case.

which you would think one who had an accident
might say I've had an accident. So I find him
guilty on each of the three counts.

The defendant appealed his conviction to the district court,[2] Fed. R. Crim. P. 58(g)(2)(B), which affirmed.

## II.

### Notice

We first treat the issue of notice. Strong has admitted, as he must, that he knew that it would be wrong to spread feces around a bathroom, especially a public bathroom. He did not need notice posted on a wall to tell him that. His defense is that he did not do so, or at least did not do so intentionally, and even if he did, his conviction must fall because there was a violation of legal notice requirements. Strong argues that posting at the entrance of the building is a prerequisite for prosecution and that even if he had notice from an indoor posting of the plaque, that was not sufficient.

We review statutory and regulatory interpretations de novo. United States v. McFarland, 445 F.3d 29, 31 (1st Cir. 2006). Strong's argument is that the language of 40 U.S.C. § 1315(c)(1) and 41 C.F.R. § 102-74.365 supports his claim that posting at the entrance was a prerequisite for his prosecution. Neither the

_____

[2] Strong claimed, inter alia, that the magistrate judge erred in denying his motion to dismiss for inadequate notice. He did not make a sufficiency of the evidence claim, as he does in this appeal.

-8-

enabling statute nor the regulation conditioned Strong's conviction on there being a posting of the substantive criminal regulations at the building entrance.

A.        The Statute's Conspicuous Posting Requirement Was Met

We begin with the statute, which states:

> The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.

40 U.S.C. § 1315(c)(1) (emphasis added). The statute both authorizes the Secretary to come up with substantive rules needed for the protection and administration of the property and to post them. The statute only requires conspicuous posting, not posting at the entrance. It also does not require actual notice. For Strong, and for people going to the clerk's office, as Strong repeatedly did, notice was clearly posted conspicuously in full compliance with the statute. The framed posting was right at the entrance to the clerk's office at eye level and contained the word "WARNING" in large font and bold, all-capital letters at the bottom. All members of the public entering the building to go the clerk's office have to pass directly in front of the notice

immediately upon leaving the entrance vestibule after going through security.

Nonetheless, Strong claims United States v. Bichsel, 395 F.3d 1053 (9th Cir. 2005), supports his argument. It does not. Bichsel, a Jesuit priest, chained himself to courthouse doors to protest a war. The regulations were posted inside the building and so were not within his view, raising the issue of whether the notice was conspicuous. Id. at 1054. Nonetheless, the Ninth Circuit affirmed his conviction because he received actual notice of the regulations. Bichsel did not decide whether conspicuous notice is a required element for a conviction pursuant to a regulation promulgated under § 1315. It only held that actual notice was sufficient. Bichsel, 395 F.3d at 1056-57; see also United States v. Irby, 269 F. App'x 246, 249 (4th Cir. 2008) (per curiam) ("[W]hen Congress wishes to make posting an element of an offense, it is well aware of how to do so."). The notice here was in fact "conspicuously" posted for anyone going to the clerk's office, as this defendant had done many times.[3]

---

[3] Strong argues that we must interpret the applicable statutory language in light of an older version of the statute. The older statutory language enabled the agency to promulgate rules and regulations with reasonable penalties "Provided, [t]hat" the regulations were posted and kept posted in a conspicuous place on the property. 40 U.S.C. § 318a (2002). The "provided that" language has been dropped in the version at issue. That language is relevant, Strong claims, because the legislative history says that the amending legislation "makes no substantive change in existing law and may not be construed as making a substantive change in existing law." Pub. L. No. 107-217, subtit. V,

Contrary to the dissent's claim, our conclusion that the posting was conspicuous for someone in Strong's position is not at odds with Bichsel or United States v. Strakoff, 719 F.2d 1307 (5th Cir. 1983). The dissent adopts as a definition of "conspicuous place," "one which is reasonably calculated to impart the information in question," Strakoff, 719 F.2d at 1309 (quoting Black's Law Dictionary 382 (rev. 5th ed. 1979)). It then concludes that this requires posting outside the building entrance, but the statute says no such thing and provides no basis for adoption of a per se rule. Here, the posting was conspicuous. This case differs from Strakoff and Bichsel because in those cases the posting could not have reasonably imparted the information to those specific defendants concerning their violations on the facts of those cases. Here, it could have.

In Strakoff, where the older version of the statute was at issue, the defendant was charged with bringing a firearm into the courthouse in violation of a GSA regulation. 719 F.2d at 1308. The court held that an individual could not be prosecuted for entering a federal courthouse with a firearm where the regulations

§ 5(b)(1), 116 Stat. 1062, 1303 (2002). That does not tell us, of course, what Congress understood the existing law to be. Strong argues that we must adhere to a rule that proper posting is an element of the substantive offense. United States v. Strakoff, 719 F.2d 1307, 1309-10 (5th Cir. 1983). He says proper posting can only be outside posting. The dissent also claims posting must be at the entrance to be sufficiently conspicuous to constitute proper posting. As discussed in the text, that is not true and Strakoff is distinguishable from this case.

were not posted at the entrance before the security screening, but rather at other places inside the courthouse.  Id. at 1309-10.  The Fifth Circuit reasoned that any person carrying a firearm would necessarily violate the regulation before being able to obtain the relevant information.  Id. at 1310 (emphasizing that "just entering the Courthouse with a gun is illegal").  That certainly was not the case here[4] because Strong had many opportunities to see the posting before he violated the regulations.  And, contrary to the dissent's implication, Strakoff did not create a bright line rule that for all offenses and for any prosecution posting must be provided at the entrance to be conspicuous.[5]  Indeed, the Fifth Circuit specifically stated that the notice was "not posted in places reasonably calculated to impart the prohibitions of that section," referring to the gun prohibition.  Id. (emphasis added).

Likewise Bichsel does not create a rule that under the statute conspicuous posting must be outside the entrance of the building.  To the contrary, in its analysis of the conspicuous posting question the Ninth Circuit focused on whether the posting was reasonably calculated to impart information to Father Bichsel

---

[4]  In addition, possessing a gun properly registered in one's name on entrance to a federal building is unlike the situation here, where everyone knows smearing feces in a bathroom used by others is wrong.

[5]  The court also stated that the notice "could arguably be conspicuous . . . to those visitors leaving the Courthouse," because one posting was at an exit.  Strakoff, 719 F.2d at 1310.

himself.  For example, the court stated "Father Bichsel . . . had no way of seeing the posted notice," and that the posting was not "reasonably calculated to impart notice to Father Bichsel or a similarly situated individual."  Bichsel, 395 F.3d at 1056.  As we have discussed, with respect to Strong or similarly situated individuals going to the clerk's office, the posting here was conspicuous.

B.          The Regulation Does Not Make Posting a Prerequisite for Prosecution

That means Strong's argument must rest on the regulation. We turn to the language of the posting regulation, United States v. Tobin, 480 F.3d 53, 56 (1st Cir. 2007), on which Strong bases his argument:

> The rules in this subpart apply to all property under the authority of GSA and to all persons entering in or on such property.  Each occupant agency shall be responsible for the observance of these rules and regulations. Federal agencies must post the notice in the Appendix to this part at each public entrance to each Federal facility.

41 C.F.R. § 102-74.365.

Strong reads into the substantive regulations a non-existent limitation on enforcement of the substantive crimes from this separate regulation in 41 C.F.R. § 102-74.365.

The regulation first says that the "rules in this subpart apply to all property under the authority of GSA and to all persons entering in or on such property."  Id.  This works against Strong

and makes clear that the prohibitions did apply to Strong.  Second, the regulation says the occupant agencies are responsible for observance of the regulations.  Third, it directs the agencies to post the notice at each public entrance.  Id.  The regulation does not state that the regulations will not apply if they are not posted at each entrance and it contains no other limiting language on the applicability of the substantive regulations.  Strong's reading finds no support in the language or structure of the regulation.

It is also contrary to judicial construction of parallel regulations and statutes.  For example, 38 C.F.R. § 1.218(a)[6] contains a clause mandating the posting of applicable regulations at VA facilities.  The Fourth Circuit interpreted it and 38 U.S.C. § 901(d)[7] in United States v. Irby, 269 F. App'x 246.  In Irby, the Fourth Circuit held that a defendant making an argument almost

---

[6] The language of that Veterans Affairs (VA) posting regulation reads:
> Pursuant to 38 U.S.C. [§] 901, the following rules and regulations apply at all property under the charge and control of VA . . . and to all persons entering in or on such property.  The head of the facility is charged with the responsibility for the enforcement of these rules and regulations and shall cause these rules and regulations to be posted in a conspicuous place on the property.

38 C.F.R. § 1.218(a).

[7] The statute reads: "The rules prescribed under subsection (a) [requiring the Secretary to promulgate regulations], together with the penalties for violations of such rules, shall be posted conspicuously on property to which they apply."  38 U.S.C. § 901(d).

identical to Strong's was reading the language "precisely backwards," because the language states that the rules do apply to all persons on the property and then requires posting. Id. at 248. The application of the rules was not preconditioned on conspicuous posting, just as the regulatory language here did not precondition application of the rules on posting at an entrance.

As the Irby court noted, the posting requirement was found both in a different subsection of the regulation than that which described the substantive offense and a different subsection of the statute than that which gave the Secretary authority to promulgate regulations. Id. The posting requirement relevant in this case is found in an entirely different section of the regulations, § 102-74.365, than the offenses for which Strong was charged and convicted, §§ 102-74.380(b) & (d), 102-74.390(a).

Moreover, it would be strange if the reading Strong advances was intended. Under Strong's reading, if a building had multiple entrances and at all but one the posting was placed, an individual could avoid prosecution for committing a substantive offense even if he passed through one of the entrances with the posting. That could not have been intended. The same is true here, where the regulation was imperfectly followed, but in a manner with no material, adverse impact on the defendant, since notice was posted in compliance with the statute and the defendant passed by the notice on a number of occasions. We see no reason to

craft and use the extreme device of precluding conviction in order to better police the Secretary's instructions to building managers. That would be contrary to the intent of both Congress and the Secretary.[8]

### III.

#### Sufficiency of the Evidence

Strong also argues that there is insufficient evidence to convict him of the three substantive offenses because he did not have the requisite intent; rather, he accidentally damaged the restroom, created a hazard, and created a nuisance. The magistrate judge required the government to show that Strong knowingly created a hazard and nuisance and willfully damaged the restroom. Although Strong's appeal was initially framed as a challenge to the intent required, his reply brief clarifies that the district court "correctly found that . . . Mr. Strong's conduct ha[d] to be voluntary." Strong argues not that the legal standard was incorrect, but that the evidence did not suffice to show that the conduct was voluntary or intentional. At its core, his argument is that to support his convictions his conduct in damaging the restroom and "in creating the hazard or nuisance cannot have been

---

[8] We decline to engage in an "implied actual notice" analysis, as in the decisions below, at least in part because we do not know what it means or is intended to mean. Here, the notice was sufficiently conspicuous, there are no due process concerns, and the statute itself does not require "actual" knowledge, though actual knowledge is plainly an adequate substitute.

accidental."  The magistrate judge, however, found as a factual matter that Strong's actions were willful.[9]

His claim of error regarding the sufficiency of the evidence is unpreserved.  As a consequence, we review the evidence to determine if there is a "clear and gross injustice."  United States v. Hicks, 575 F.3d 130, 139 (1st Cir. 2009) (quoting United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006)) (internal quotation mark omitted); see also United States v. Concemi, 957 F.2d 942, 950 (1st Cir. 1992).  For the following reasons, we find no such injustice here.

---

[9] The dissent argues, sua sponte, that the magistrate judge erred in initially using a "knowingly" mens rea for the two offenses of creating a hazard and creating a nuisance, neither of which contains an explicit mens rea requirement in the regulatory text.  The third offense, damaging federal property, explicitly contains a willful mental state.  The record shows, however, that after trial the magistrate used "willfulness" and made findings that Strong's actions were "willful" -- which is the standard Strong adopts -- making the argument over the proper standard irrelevant.

Additionally, Strong does not argue, on appeal, that there was legal error as to the standard used, but solely that the evidence was insufficient.  In his opening brief, he argued that the evidence was insufficient to prove that he acted willfully.  And, in his reply brief Strong states: "The magistrate correctly found that in order to be convicted, Mr. Strong's conduct had to be voluntary.  Black's law dictionary [sic] defines 'willful' as 'voluntary' or 'intentional'" (emphasis added).  The reply brief goes on to concede that the government's showing was satisfied if "his conduct in creating the hazard or nuisance [was not] accidental."  Strong's argument is different than the dissent's. The evidence is sufficient for a rational trier of fact to conclude that Strong did not accidentally smear feces in the bathroom.

-17-

Mason testified that Strong's feces covered over seventy-five percent of the floor,[10] was on at least two walls, was on the left side of the toilet seat and bowl, and was near the paper towel and toilet paper dispensers, and that Strong's feces-covered boxers were draped over the waste basket. Importantly, Mason (the supervisor of the cleaning service) testified that in her opinion the feces were smeared and not splattered as they might have been had they been accidentally distributed.

Strong took the stand and testified on his own behalf. He accused Mason of lying about the condition of the bathroom. He argued that he had created the mess, accidentally, while merely trying to clean himself up in the bathroom.

After observing and listening to these two crucial witnesses, the magistrate judge found Mason to be credible and credited her testimony over Strong's. Even when a challenge to such a determination is preserved, a factfinder's determination of credibility is subject to clear error review. See Mitchell v. United States, 141 F.3d 8, 17 (1st Cir. 1998). We find none here.

---

[10] The dissent argues this fact is not material because the bathroom is small and not one meant for multiple users. Exhibit 10 is a photo of the clean bathroom, and supports the finding that the bathroom was large enough for someone to move around in without smearing to that extent; the extent of the smearing meant it could not have been accidental. Importantly, the magistrate judge that found the extent of the feces coverage to be highly relevant was in fact able to view the restroom.

It is also relevant that the defendant did not report the state of the bathroom to anyone. It would have been easy for him to inform the two deputies waiting for him outside of the bathroom or the person with whom he spoke in the clerk's office. And, at the time, Strong had twice lost on a social security case in the district court; the case had been dismissed, and his motion for reconsideration had been denied.

The dissent finds that the evidence supports Strong's defense that the only reasonable inference is that "leftover feces were the result of an accident." In so doing, the dissent views the facts anew in a favorable light to the defendant, whose testimony it repeats, rather than in the light most favorable to the verdict, as required on appeal. An appellate court is forbidden to do that. See United States v. Rodríguez-Reyes, 714 F.3d 1, 7 (1st Cir. 2013) (on sufficiency of the evidence challenge we ask "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government," established guilt (quoting United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005) (internal quotation mark omitted))); United States v. Burgos, 703 F.3d 1, 4 n.1 (1st Cir. 2012) ("[W]e view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Government."). This is a cardinal rule of appellate review.

The dissent begins with the red herring argument that Strong accidentally lost control of his bowels, but that is immaterial to the pertinent question. The relevant question is not whether he purposefully defecated his pants, but whether he willfully spread his feces all over the bathroom resulting in a nuisance, hazard, and damage. Moreover, the refusal of the CSO to let Strong use the restroom before passing through security may have given Strong motive to soil the restroom.

Moreover, the dissent misstates the extent of the area covered by feces. It also attempts to argue that feces were found in those places where one would be touching to clean up after an accident. Contrary to the dissent's view, seventy-five percent of the floor would not be covered in feces if Strong had only placed his jeans on the ground. And, the dissent claims it was "understandabl[e]" that feces were found on the walls "near the floor" because Strong was frantically cleaning himself and his clothes. But Mason, whose testimony the court found credible, said the feces were more than two feet up the wall in some places; not just "near the floor."

Finally, the dissent finds it persuasive that feces were not found in "difficult-to-clean places" such as the drywall, the sink, or the mirror, which it hypothesizes is what someone would do to willfully cause damage. Strong need not have contaminated 100%

of all surfaces to support the conviction for what he did willfully do.

The defendant has not met the heavy burden he faces on appeal and the evidence is sufficient to support the magistrate judge's verdict.

IV.

For the reasons stated, Strong's convictions are <u>affirmed</u>.

**-Dissenting Opinion Follows-**

**TORRUELLA, <u>Circuit Judge</u> (Dissenting).** The momentous importance of this case surely forecasts its deserved place in the annals of federal prosecutorial history. Before us is an appeal from a conviction of a citizen who was prosecuted for soiling federal property after he had the misfortune of involuntarily losing control of his bowels while on the premises of the United States District Court for the District of Maine. This incident was followed by the filing of multiple criminal charges.

Following a bench trial, a magistrate judge found defendant Ronald Strong guilty of willfully damaging federal property, 41 C.F.R. § 102-74.380(b), creating a hazard on federal property, <u>id.</u> § 102-74.380(d), and creating a nuisance on federal property, <u>id.</u> § 102-74.390(a). Thereafter, Strong was sentenced to seven days in jail for each count, to run concurrently. He appealed his convictions to the district court, wherein the convictions were affirmed.

On appeal, Strong argues that his convictions must be reversed for two independent reasons: First, that a prerequisite to a prosecution under the above regulations was not satisfied -- namely, that notice of those regulations was not properly posted. Second, that the evidence was insufficient to establish the mental state required for the convictions. Neither argument persuades the majority. Because I find both arguments persuasive, I respectfully dissent.

# I. Background

On May 24, 2011, Strong arrived at the Edward T. Gignoux U.S. Courthouse in Portland, Maine to conduct business at the clerk's office. While waiting in the security line at the entrance, Strong told security officer Franklin Holcomb that he needed to use the restroom right away. Holcomb responded that Strong could do so after being screened. As Strong approached the metal detector, he involuntarily lost control of his bowels[11] and told Holcomb that he had defecated in his pants. Holcomb then escorted Strong to a restroom, with Strong intermittently trailing feces on the floor leading from the security post to the restroom.

Strong's testimony as to what took place upon being left alone in the bathroom is as follows:

> Q. What was the nature of the excrement that erupted when you lost control of your bowels?
> A. It was liquid and there was pieces in it.
> Q. Okay. And what did you do after it happened?
> A. The Security personnel walked me to the bathroom. I walked into the bathroom, I removed my jacket, I put it in the far corner, same jacket I wore today. I put it in the corner.
> Q. What did you do next?
> A. Then I removed my trousers, I removed my socks.
> Q. What were the condition of your trousers and socks?

---

[11]Strong testified that he defecated in his pants as a result of an "uncontrollable urge." At the trial Holcomb testified that "after I noticed the odor . . . [I] realized he probably did have some type of an accident."

A.  My jeans were just completely covered in feces on the inside. My socks were covered with feces, my legs, you know, had feces all right down -- down my legs and on to my ankles. I took a paper towel --

Q.  Was it dripping down your legs and ankles?

A.  All the way to my ankles.

Q.  And what did you do with the clothing when you took it off?

A.  I put the jeans on the floor, I mean this is so prescribed I just don't -- I just put it right at my feet there.  And then the boxers I took off and I put in the trash.

Q.  And why did you throw the boxers in the trash?

A.  They were destroyed, there was no -- I mean, how could I carry them home?  What was I going to put them in?  I mean, it was covered in feces, there was -- I mean, what was -- I mean, I had my briefcase, I mean, what was I supposed to do with them?  I threw them in the trash.

Q.  Okay.  Did you at any -- did you at any time reach for paper towels?

A.  Many times.

Q.  What were you doing with the paper towels?

A.  Cleaning my legs, my back side, it was on my sides, I mean, because it was -- it was a mess, it was just a mess.

Q.  Did you attempt to clean your jeans?

A.  A little bit, I mean, I took paper towel, you know, through, you know, through them but I just -- it was futile, it was just --

Q.  At any time did you sit on the toilet?

A.  A couple times.

Q.  Would you explain what happened with you sitting on the toilet, please?

A.  Well, I cleaned myself up, I started to urinate, and I stood up again and I kept wiping myself and then I sat down to put my socks back on.  I didn't have any boxers at that time, so I put my socks back on.  I put my jeans back on, you know, I've been -- I don't know if you've ever had an incident in the kitchen where you have something spill or something, you're grabbing everything and anything trying to mop up milk or -- I don't know if you've ever spilled spaghetti sauce

and there's meat, you're trying to get it up as quick as you can. And that's -- basically it was just like this frenetic pace, but it was repulsive, I mean, the smell was -- and I was embarrassed, I mean, here I had used the bathroom in my pants, a 50-year-old man and I was in a federal courthouse. It was very, very embarrassing. So, I mean, so it was a frenetic pace just to clean myself up. So I did the best I could with what I --

Q. And what did you do with your jeans once you had attempted to clean yourself off?

A. I put them back on.

Q. What condition were they in when you put them back on?

A. I mean, there were wearable, I mean, you could notice even when I had them on the back of them were wet, the back of them were wet, you know, they were just wet in the back. But I had my jacket with me, the jacket I have worn today. And then I cleaned up, I mean, I went to the sink, I washed up as best as I could, I wiped the sink down, and I just exited the -- the bathroom and then I went to the clerk's office.

Q. Was there any equipment in the bathroom such as mops or bleach or biohazard bags or anything that you would have had access to?

A. No, I never seen anything like that. I never seen anything like that.

Q. So what did you use in an attempt to clean yourself up?

A. Just the paper towels that were there and the -- and the toilet -- the toilet paper. I mean, it was -- I mean, it would take the toilet paper, I mean, you would wipe yourself, I'm not just talking about your backside, I'm talking about the back of your legs, the side of your legs, I mean, it was everything, it was on my hands, I mean, it was everywhere, I mean, it wasn't like just -- you know, I mean, it was everywhere and it was unbelievable. I mean, it was humiliating.

Q. I see. And did you feel ill when you had this attack?

A. Yeah, my stomach was upset, but I have a heart condition, I take 13 different types of heart medicines, you know, I take a lot of

medicines. I've had kidney surgery twice in the last year. I have a lot of issues. I mean, this incident has happened once before but it was years ago at a Kmart but not to this -- and I was appalled that they charged me. I was just -- the -- I got the paper, I was like, are they out of their minds? I still can't believe I'm sitting here today, I'm still embarrassed, I'm angry.

Q. Did you try to deliberately put excrement on any property in the federal court or any equipment?

A. Unequivocally no. That's repulsive, I'm a very clean person, everybody knows that. I would never do that; that is so nasty. I just -- I mean, I was just -- trying to touching myself trying to clean myself up I was -- I was grossed out, it was like just cleaning myself. I can't imagine any human being that would deliberately smear anything of that -- that -- I mean, you don't understand how repulsive this was, it was -- it was -- the smell was bad. It was very embarrassing.

Q. And it was dripping off you and your clothing on to the floor in the bathroom?

A. Well, I didn't know anything about that. I wasn't privy to that; my intentions were my persons. I wasn't thinking anything about the bathroom floor or any of that, I didn't think anything of the bathroom floor, I didn't notice it, I mean, but that wasn't -- I mean, I was trying to clean my person up, you know, I had it on my legs, on the outside, the inside. I just -- I mean, I didn't pay any attention to the condition of the bathroom floor or anything of that matter.

Holcomb remained outside the restroom until two deputy marshals arrived. They arrived under a protocol previously implemented as part of an ongoing improper-communication case between Strong and a court employee. When Strong left the restroom, the marshals escorted him to the clerk's office. Strong entered the clerk's office smelling strongly of feces, but did not

-26-

appear angry and acted in a normal manner.  Strong then left the courthouse without further incident.

No one used that restroom for approximately fifteen minutes after Strong left the building.  At that point, a law enforcement officer went to use it, but did not, because he found it in a soiled condition.  The officer informed security that the restroom was soiled, and security called for a cleaning person.

Cleaning supervisor Christina Mason arrived to clean the restroom.  When she opened the door she saw feces on the floor, walls, toilet, toilet paper roll, toilet paper dispenser, and paper towel dispenser.[12]  Notably, the feces on the walls did not reach the top of the tile, so the feces did not touch the drywall.  In addition, there were no feces under the sink, on the sink, on the mirror, or on the plastic door shade.  Mason saw Strong's soiled underwear draped over the trash can.

Three days after the incident, Strong was charged in a three-count misdemeanor information with willfully damaging federal property in violation of 41 C.F.R. § 102-74.380(b), creating a

_____

[12]Appendix A of this opinion is a photograph of the bathroom in question, which was Government Exhibit 10 at the trial.  It depicts the physical layout, with the paper towel dispenser on the left, immediately above the trash can, followed by the sink with a mirror above it, and lastly the toilet bowl with its seat and next to it the toilet paper dispenser.  The door to this facility is open and the handle is seen on the far right.  Tile partially covers the walls on three sides of the room.
Appendix B is a photograph which depicts the door to the bathroom and shows the shade that prevents intruding on the user's privacy.  It was introduced at trial as Government's Exhibit 4.

hazard on federal property in violation of 41 C.F.R. § 102-74.380(d), and creating a nuisance on federal property in violation of 41 C.F.R. § 102-74.390(a).

On September 7, 2011, Strong filed a motion to dismiss for lack of adequate notice of the regulations under which he was charged. 41 C.F.R. § 102-74.365 provides that "[f]ederal agencies must post the notice in the Appendix to this part at <u>each public entrance</u> to each Federal facility" (emphasis added). The notice in the Appendix to part 102-74 lists the prohibitions that Strong was charged with violating. On the day of the incident, that notice was not posted at the public entrance to the courthouse. Nor was it posted in the rotunda where the security area is located and through which, as previously indicated, Strong was required to pass in entering the courthouse. Instead, it was posted on a narrow wall, several steps up from the security area, next to the stairwell leading to the second floor courtroom and the entrance to the clerk's office.[13] The notice was approximately twelve inches

---

[13]<u>See</u> Appendix C, a photograph introduced at trial as Government's Exhibit 12, which depicts the entrance to the Courthouse with the security post, through which Strong had to pass, on the right, and the notice that is the subject of this appeal on the wall on the left. The stairway leading to the courtroom on the second floor comes after the security post but before the wall with the notice.

Appendix D -- a photograph showing the entrance to the Clerk's Office, entered into evidence as Government's Exhibit 13 -- is the continuation of Appendix C and depicts the notice in question in this appeal.

by nine inches in eight-point font. Persons going to the clerk's office would pass by the notice, as would persons going from security to the restroom. Persons proceeding directly from security to the courtrooms, however, would not pass by the notice. Strong had passed by the notice when he had come to the clerk's office to conduct business on previous occasions, however he had not read the notice and was unaware of its contents. The magistrate judge denied Strong's motion.

At his bench trial in front of the magistrate judge, Strong renewed his motion to dismiss; it was again denied. At the close of the Government's case, Strong moved for a judgment of acquittal on the ground that the Government's evidence was insufficient to establish the mental state necessary for a conviction. This motion was denied, with one exception not relevant here.[14] The magistrate judge found Strong guilty on all three counts and sentenced him to seven days in jail. Strong appealed his convictions to the district court, which affirmed. This appeal followed.

## II. Discussion

Strong argues that his convictions must be reversed for two independent reasons. First, he claims that a prerequisite to a prosecution under the regulations was not satisfied -- namely,

---

[14]The magistrate judge dismissed those portions of each count that dealt with willful tracking of feces outside the restroom, as opposed to smearing of feces inside the restroom.

that notice of those regulations was not properly posted. Second, he alleges that there was insufficient evidence to establish beyond a reasonable doubt the mental state necessary to sustain the convictions. The majority does not agree with either point. I agree with both points and discuss them in turn.

## A. Posting

Although the Government exacts compliance from Strong with regulations of which he never had actual knowledge, the majority grants the Government an exemption from meeting the very requirements of those regulations designed to give the actual notice that Strong would have received but for the Government's noncompliance with their own regulations.

The regulatory scheme under which Strong was convicted, and the statutory scheme pursuant to which that regulatory scheme was promulgated, both include posting requirements. Federal agencies are required to post notice of the regulations that govern conduct on federal property and that create criminal penalties for misconduct. See 40 U.S.C. § 1315(c)(1), 41 C.F.R. § 102-74.365. Nevertheless, the magistrate judge held that compliance with these posting requirements is not a prerequisite to bringing a prosecution under the regulations, a decision affirmed by the district court. Considering that this holding is a matter of regulatory and statutory interpretation, it is reviewed de novo. United States v. McFarland, 445 F.3d 29, 31 (1st Cir. 2006). For

-30-

the reasons discussed below, I would hold that compliance with both the regulatory and statutory posting requirements is a prerequisite to a prosecution under the regulations.

I commence with the finding of the magistrate judge and district court that the <u>regulatory</u> posting requirement was not satisfied -- a point that the Government concedes. Also evident is the fact that neither the magistrate judge nor the district court explicitly found that the <u>statutory</u> posting requirement was satisfied, as they relied instead on finding that Strong had "implied actual notice" of the regulatory prohibitions. For the reasons stated below -- based on the record -- I would conclude that the statutory posting requirement was also not satisfied, and, furthermore, that "implied actual notice" cannot substitute for compliance with the posting requirements. Moreover, even if it could, in my view the record does not support a finding that Strong had any such notice.

### 1. **The Regulatory Posting Requirement**

41 C.F.R. § 102-74.365 provides:

The rules in this subpart apply to all property under the authority of GSA and to all persons entering in or on such property. Each occupant agency shall be responsible for the observance of these rules and regulations. <u>Federal agencies must post the notice in the</u>

> Appendix to this part at each public entrance
>
> to each Federal facility.

(emphasis added). The notice at issue here was not posted at the public entrance to the federal courthouse.

I would hold that proper posting of the notice is a prerequisite to prosecuting individuals for violating the prohibitions contained in that notice. The posting requirement is just that -- a requirement: The posting provision uses the mandatory term "must." Id. The posting provision is found in the very first section of the subpart of the C.F.R. that regulates "Conduct on Federal Property." Id. § 102-74, Subpart C. This section is indexed under "Applicability," and is titled, "To whom does this subpart [meaning the subpart regulating conduct on federal property] apply?" The language and location of this introductory section unequivocally indicate that its provisions are prerequisites to all subsequent sections in the subpart. Such subsequent sections include the prohibitions that Strong was convicted of violating: id. §§ 102-74.380, .390.[15]

---

[15]The majority latches onto the first sentence of the regulation -- "The rules in this subpart apply . . . to all persons entering in or on [federal] property." -- and argues that it makes clear that the ensuing prohibitions applied to Strong (as he is a person who entered federal property). The majority then separately reads the third sentence of the regulation -- which contains the posting requirement -- and claims that "[t]he regulation does not state that the regulations will not apply if they are not posted at each entrance" (emphasis added). But such an explicit statement seems necessary only because the majority reads these sentences in isolation and thus overlooks the internal logic of the regulation:

The text and structure of the regulations are not the sole indicators that proper posting is a prerequisite to a prosecution under the regulations. A Ninth Circuit case supports this proposition as well. United States v. Bichsel, 395 F.3d 1053 (9th Cir. 2005), dealt with a regulatory command found in another section of the subpart of the C.F.R. governing conduct on federal property. That section, 41 C.F.R. § 102-74.385, states: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals." With respect to this provision, the Ninth Circuit wrote, "To enforce this regulation, federal agencies must post notice of it 'at each public entrance to each Federal facility.'" Bichsel, 395 F.3d at 1055 (emphasis added) (quoting 41 C.F.R. § 102-74.365).

Because the regulatory posting requirement was not satisfied, I would reverse Strong's convictions.

## 2. The Statutory Posting Requirement

Even if compliance with the regulatory posting requirement were not a prerequisite to prosecution, I would hold that compliance with the underlying statutory posting requirement is such a prerequisite. The statute pursuant to which the GSA

---

Posting is required at each public entrance precisely because the rules apply to persons entering the property.

-33-

promulgated the regulations governing conduct on federal property provides:

> The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. <u>The regulations shall be posted and remain posted in a conspicuous place on the property</u>.

40 U.S.C. § 1315(c)(1) (emphasis added). Notably, the posting provision, which uses the mandatory "shall," is the only mandatory provision in this section; the other two provisions use the discretionary "may." <u>Cf.</u> <u>Jama</u> v. <u>Immigration & Customs Enforcement</u>, 543 U.S. 335, 346 (2005) (noting that discretionary nature of "may" and mandatory nature of "shall" are particularly contraposed when both terms used in same section). This choice of language conditions the validity of regulations discretionarily promulgated by the GSA on the posting of those regulations.

The legislative history further indicates that proper posting is a prerequisite to prosecution. A previous version of the statute read as follows:

> The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the property under their charge and control, and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in section 318c of this title, as will insure their enforcement: <u>Provided</u>, That such rules and regulations shall be posted and kept posted in a conspicuous place on such property.

40 U.S.C. § 318a (2000). This version explicitly conditioned the power to penalize on proper posting. The preamble to the legislation that changed the section to its current formulation reads, "An Act To revise, codify, and enact <u>without substantive change</u> certain general and permanent laws, related to public buildings, property, and works, as title 40, United States Code, 'Public Buildings, Property and Works.'" Pub. L. No. 107-217, 116 Stat. 1062 (2002) (emphasis added). According to the House Report

for this legislation, "Although changes [were] made in language, <u>no substantive changes in the law [were] made</u>."  H.R. Rep. No. 107-479, at 2 (2002), <u>reprinted in</u> 2002 U.S.C.C.A.N. 827, 828 (emphasis added).  During this editing process, provisos were removed, and "exception[s] or limitation[s] [were] introduced by the words 'except that' or 'but' <u>or by placing the excepting or limiting provision in a separate sentence</u>."  <u>Id.</u> at 3 (emphasis added).  Thus, while the limiting language was moved to a separate sentence in § 1315, that language was not intended to become any less limiting than it was in § 318a.  The House Report continues, "In ordinary amendatory legislation, intent to change substance can be inferred from a change in language.  In a codification law, however, the courts uphold the contrary presumption: the law is intended to remain substantively unchanged."  <u>Id.</u> (citing, inter alia, <u>Finley</u> v. <u>United States</u>, 490 U.S. 545 (1989)).

Case law also demonstrates that proper posting under the statute is a prerequisite to prosecution.  In <u>United States</u> v. <u>Strakoff</u>, 719 F.2d 1307, 1309-10 (5th Cir. 1983), the Fifth Circuit interpreted the prior version of the statute to require posting as a prerequisite to a prosecution.  <u>See</u> <u>id.</u> at 1309 ("But for Strakoff to have violated § 101-20.313, the regulation must have been 'promulgated pursuant to section 318a' -- posted and kept posted 'in a conspicuous place' in the Courthouse."  (citations omitted)).  Decades later, in <u>Bichsel</u>, the Ninth Circuit, working

-36-

under the current version of the statute, reached the same conclusion (though it held that actual notice could substitute for proper posting).  See Bichsel, 395 F.3d at 1056.

Neither the magistrate judge nor the district court made an explicit finding as to whether the statutory posting requirement was satisfied in this case.  They instead relied on the finding that Strong had "actual implied notice" of the regulatory prohibitions.  For the reasons stated below, on the record before me, I am forced to conclude that the statutory posting requirement -- that the notice be posted in a "conspicuous place" -- was not satisfied, and, as will be further explained, that this failure overrides any "actual implied notice" theory.

This Court has not yet addressed what constitutes a "conspicuous place" under § 1315(c)(1).  In Strakoff, the Fifth Circuit, noting that there were no federal decisions interpreting "conspicuous place," adopted Black's Law Dictionary's definition -- "one which is reasonably calculated to impart the information in question."  Strakoff, 719 F.2d at 1309 (quoting Black's Law Dictionary, 382 (rev. 5th ed. 1979)).  The defendant in Strakoff was convicted of violating a regulation that criminalized carrying or possessing a firearm on federal property.  Id. at 1307.  The Fifth Circuit found that the notice in that case was not posted in a "conspicuous place" because "one entering the Courthouse through either public entrance, going directly to and through the metal

detector, and boarding an elevator to get to the courts or other federal offices would never see [the] posted notice." Id. at 1309.

This, of course, is exactly what would happen with the posting in the courthouse in question, for, as shown in the photograph depicted in Appendix C and as found by the magistrate judge, anyone going directly from the security checkpoint to the stairway and up to the courtroom on the second floor would not pass in front of or see the notice that was posted at the entrance to the clerk's office. This would result in a double standard for enforcing the regulations: one for those going to the clerk's office, to whom "implied actual notice" would be applied, and another for those proceeding directly to the second floor courtroom, who would be exempt from the regulations.

In Bichsel, the Ninth Circuit explicitly followed Strakoff in adopting the Black's Law Dictionary definition. 395 F.3d at 1055. The defendant in that case was convicted of violating a regulation that criminalized failure to comply with orders of federal police officers. Id. The Ninth Circuit found that the notice in question was not posted in a "conspicuous place." Id. at 1056. The Bichsel court wrote that "a place not accessible, let alone within reading distance, to an outside courthouse visitor cannot be conspicuous enough to impart notice of the regulation." Id. That court found that "the indoor posting of the regulation was not in a 'conspicuous place' reasonably

-38-

calculated to impart notice to . . . [an] individual outside of the courthouse."  Id.

Here again is another reason why government compliance with the notice requirements of its regulations should be exacted before someone can be charged with their violation:  One must know _before_ one enters the building what is expected _in_ the building

I would adopt the same definition.  A "conspicuous place" is one which is reasonably calculated to impart the information in question.  As in Strakoff and Bichsel, the information in question here pertains to how one must comport oneself upon _entering_ federal property, and the consequences for failing to do so.  And, as in Strakoff and Bichsel, I would find that any place other than the entrance to the federal property is not a place reasonably calculated to impart that information.  Whether the information pertains to the items one may possess on the property (as in Strakoff, 719 F.2d at 1307-08), the persons from whom one must take orders while on the property (as in Bischel, 395 F.3d at 1054), or the limitations on one's behavior upon entering the property (as in this case), the entrance to the property is the only place reasonably calculated to impart that information.  This is so because the entrance is the only place where each visitor is guaranteed to walk past the posting.  As a matter of due process, if a visitor is to be held to a federal regulation regarding conduct _on_ federal premises, it is only logical, fair, and

-39-

constitutional that the visitor be clearly and unambiguously forewarned of what is expected of him or her <u>before</u> becoming subjected to the regulation.

In finding that the posting here was conspicuous, the majority attempts -- unsuccessfully, in my view -- to distinguish <u>Strakoff</u>. As in this case, in <u>Strakoff</u> the notice was posted, but not at the entrance or in the security area. 719 F.2d at 1309. As in this case, in <u>Strakoff</u> persons proceeding directly from security to the courtrooms would not pass the notice. <u>Id.</u> The majority is willing to accept that the posting in <u>Strakoff</u> was not conspicuous, but apparently only because the regulation at issue there governed the items that one may possess on federal property. On that view, the entrance to property is the only place reasonably calculated to impart information about the <u>items</u> prohibited on that property, but other areas of the property are reasonably calculated to impart information about the <u>conduct</u> prohibited on that property. Respectfully, I do not see how this distinction makes a difference or can convincingly support Strong's convictions. Though in this <u>particular</u> case, the relevant conduct occurred well past the entrance to the property, to be effective, restrictions on behavior just as much as restrictions on possession should be announced at the point at which they begin to apply -- the entrance to the courthouse, as required by the regulation -- not later.

The majority attempts to further distinguish Strakoff by noting that "possessing a gun properly registered in one's name on entrance to a federal building is unlike the situation here, [because] everyone knows [that] smearing feces in a bathroom used by others is wrong." On that view, conspicuous posting is apparently a prerequisite to prosecution for certain crimes, but not others. But the statute does not discriminate -- it mandates conspicuous posting for all regulations -- and this Court should not substitute its own vision of the law for that which was enacted by Congress.

Because the statutory notice requirement was not satisfied, I would reverse Strong's convictions.

### 3. **"Implied Actual Notice"**

To evade the fact that neither the regulatory nor the statutory posting requirement was satisfied, the magistrate judge and district court decided that noncompliance with such requirements is irrelevant where the defendant has notice of the regulations. They then found that Strong had "implied actual notice" of the applicable regulations. "Implied actual notice" (whatever that may be) cannot substitute for a statutorily mandated proper posting, but, even if it could, Strong did not have such diluted notice.

The conclusion that "implied actual notice" can substitute for proper posting is a legal determination subject to

de novo review.  See United States v. Bucci, 582 F.3d 108, 115 (1st Cir. 2009).

Cases similar to the one at hand have established an actual-notice exception to the posting requirements:  In other words, noncompliance with the posting requirements will not bar prosecution where the defendant had actual notice of the regulatory prohibitions.  See Bichsel, 395 F.3d at 1056-57 ("The actual notice exception fulfills the rationale behind the conspicuous posting requirement because actual notice is the best notice."); United States v. Davis, 339 F.3d 1223, 1228 (10th Cir. 2003) ("We . . . hold that actual knowledge of a regulation satisfies a potential posting requirement.").

In the proper case, it may be appropriate to recognize this actual-notice exception, but this is not that case. Furthermore, the concept of "implied actual notice" is unprecedented in this context; in fact, this Court has never held -- nor have the parties pointed to an opinion in which another court has explicitly held -- that anything other than actual notice can substitute for proper posting.[16]  This is undoubtedly because

_____

[16]The Government contends that United States v. Roper, No. 03-M-361 (CLP), 2003 WL 24017061 (E.D.N.Y. Nov. 24, 2003), an unpublished district court case, establishes that "implied actual notice" can substitute for proper posting.  But Roper is not persuasive.  In that case, the court primarily held that proper posting was not a prerequisite to prosecution.  Id. at *16.  In the alternative, the court found that the posting was proper, as it was conspicuous.  Id. at *17.  Then, again in the alternative, the court found that the defendant had actual notice of the relevant

invoking some lesser form of notice in the criminal context could raise due process concerns. See United States v. Washabaugh, No. 3:07-PO-253, 2008 WL 203012, at *1 (S.D. Ohio Jan. 22, 2008) (stating that "it would be unconstitutional to punish Defendant for violating the . . . regulation" where posting requirement was not satisfied (citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972) for the proposition that "[i]f vague laws are unconstitutional, a fortiori secret laws violate very basic considerations of due process")). At a minimum, under the statutory and regulatory constraints as well as the facts of this case, I would decline to hold that "implied actual notice" can substitute for proper posting.

But even if "implied actual notice" could substitute for proper posting, it was clearly erroneous for the magistrate judge, and the district court, to find that Strong had such notice. See United States v. 15 Bosworth St., 236 F.3d 50, 53 (1st Cir. 2001) (reviewing factual findings under the deferential clearly-erroneous standard). Forms of notice inferior to actual notice are implied where an individual comes under a duty to investigate, such that the knowledge that would have been gained from the investigation

---

prohibition via a verbal warning. Id. at *18. Finally, the court stated that the defendant "should have seen and received actual notice that disorderly conduct of the type charged here was prohibited" because he passed by the posted regulations. Id. at *16-18 (emphasis added). This fourth of the alternative arguments -- and one on which the court did not elaborate -- does not provide the support that the Government's position needs to succeed.

can be imputed to the individual. See, e.g., Smith v. F.D.I.C., 61 F.3d 1552, 1558 (11th Cir. 1995); Shacket v. Philko Aviation, Inc., 841 F.2d 166, 171 (7th Cir. 1988) (Posner, J.). In the present case, neither the magistrate judge nor the district court explained why Strong would have come under a duty to investigate the inconspicuous posting. Although Strong had walked by the posting on previous occasions, the posting was not so blatant as to make a reasonable person examine it more closely. See Exxon Corp. v. Raetzer, 533 S.W.2d 842, 846 (Tex. Civ. App. 1976) ("[T]he fact which is claimed to put a person on notice must be of a nature that would normally excite investigation; . . . circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation, are not sufficient . . . ."). From the facts found by the magistrate judge as to the location of the posting as well as the description of the notice itself (twelve inches by nine inches in eight-point font), the conclusion that such posting would be conspicuous to an occasional visitor is at best dubious and equivocal. Furthermore, the conclusion that -- under the stressing and humiliating circumstances in which Strong found himself on the day of the incident (escorted by a security officer from the security area to the restroom, and then escorted by marshals to the clerk's office and out of the building) -- Strong obtained notice of the inconspicuous posting is beyond the pale. It goes without

saying that a person under these circumstances would not pause to read an inconspicuous posting.

In my view, the foregoing reasons necessitate the reversal of Strong's convictions.

B. **Sufficiency of the Evidence**

Even if the noncompliance with the posting requirements did not necessitate the reversal of Strong's convictions, I would hold that reversal is required for another reason: The magistrate judge clearly erred in finding that there was sufficient evidence -- establishing Strong's mental state -- to sustain the convictions.

Strong's sufficiency-of-the-evidence claim is unpreserved, so he must establish plain error, and the evidence is reviewed to determine if there was "clear and gross injustice." United States v. Hicks, 575 F.3d 130, 139 (1st Cir. 2009) (quoting United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006)) (internal quotation mark omitted); see also United States v. Concemi, 957 F.2d 942, 950 (1st Cir. 1992). To establish plain error, Strong must show: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected his substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. United States v. Meadows, 571 F.3d 131, 144 (1st Cir. 2009). I would find that the magistrate judge committed plain error in two ways: First, by

-45-

implying the wrong mental state requirement, and, second, by finding beyond a reasonable doubt that the requirement was satisfied.

## 1. **Implying a Mental State Requirement**

The regulation making it a crime to damage federal property explicitly includes a "willfully" mental state requirement. 41 C.F.R. § 102-74.380(b). The other two regulations under which Strong was convicted however -- the one making it a crime to create a hazard on federal property and the one making it a crime to create a nuisance on federal property -- do not explicitly include mental state requirements. Id. §§ 102-74.380(d), .390(a). The magistrate judge required the Government to prove that Strong knowingly created a hazard and nuisance, and willfully damaged the restroom. The magistrate judge found that the Government proved these elements beyond a reasonable doubt.

I would find that the magistrate judge committed error by implying a "knowingly" mental state requirement into the two regulations that lack an explicit mental state requirement. The magistrate judge should have implied a "willfully" mental state requirement. At first, the magistrate judge did seem to imply a mental state requirement of "willfully." He wrote, "Presuming that conviction on these offenses requires, at a minimum, proof of a voluntary act, the court finds that the [regulation] accurately

-46-

warns that <u>voluntarily</u> tracking or smearing feces in such a manner that a hazard, nuisance or damage ensues, is conduct proscribed by the regulations" (emphases added).  The first entry in Black's Law Dictionary for "voluntary" is, "Done by design or intention." (9th ed. 2009).  Doing something by design or intention means to do that thing willfully, and not merely knowingly.  But the magistrate judge went on to say that mere knowledge, as opposed to willfulness, would suffice.

In my view, this was error, because when a crime lacks an explicit mental state requirement, "general intent" is required. <u>See</u> 21 Am. Jur. 2d Criminal Law § 118 (2013).  And

> [a] general-intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident.  The term refers to whether a defendant intended deliberate, conscious, or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness. . . .  [I]f [the act is] done voluntarily, the inference thereupon arises that the defendant intended that which resulted.

<u>Id.</u>  In other words, the magistrate judge should have implied a mental state requirement of "willfully."

-47-

## 2. **Finding the Mental State Requirement Satisfied**

In my view the magistrate judge also committed error by finding -- as to the one regulation that explicitly includes a "willfully" mental state requirement -- that the Government proved beyond a reasonable doubt that Strong willfully smeared feces in the restroom. And, had the magistrate judge properly implied a "willfully" mental state requirement into the other two regulations, I would find that the evidence was legally insufficient to sustain the convictions under these regulations as well.

The majority accuses me of viewing the facts anew and points out that on a sufficiency-of-the-evidence challenge, we ask whether any rational factfinder could have found that the evidence presented at trial -- together with all reasonable inferences -- established guilt beyond a reasonable doubt. I am not viewing the evidence anew: We are required to view all the evidence in the light most favorable to the Government, and then to draw therefrom inferences that are "reasonable" or "legitimate." See, e.g., United States v. Savarese, 686 F.3d 1, 8 (1st Cir. 2012); United States v. Medina-Garcia, 918 F.2d 4, 6-7 (1st Cir. 1990). In my opinion, inferring willfulness from the evidence presented, even viewed in the light most favorable to the Government, is neither reasonable nor legitimate.

Contrary to the majority's view, the fact that seventy-five percent of the floor was covered with feces does not support an inference of willfulness. As the picture in Appendix A illustrates, the bathroom in question is small: It has one toilet, one sink, and is meant to be occupied by only one person at a time. If feces covered seventy-five percent of the floor in a large bathroom -- one containing multiple stalls and meant for multiple users -- an inference of willful smearing might reasonably be drawn. But it is unreasonable to infer willfulness when seventy-five percent of the floor could have come into contact with feces simply by virtue of Strong having undressed, cleaned, and dressed himself in the confined space.[17]

Viewing the evidence in the light most favorable to the Government, the only reasonable inference to draw is that Strong tried to clean himself, and that the leftover feces were the result of accident. The evidence is uncontradicted that Strong involuntarily lost control of his bowels, most likely because of his physical impairments and in reaction to the numerous medications he was taking. Furthermore, the feces were predominately in areas of the restroom that one would touch in attempting to clean up. Feces were understandably found on the

--------

[17]In the alternative, because it is biologically impossible for one person to produce enough feces to cover seventy-five percent of the floor and more than two feet of the wall in some places, that finding -- which provided much of the support for the inference of willfulness -- is, in my view, incredible as a matter of law.

floor, for that is where Strong placed his soiled jeans. Feces were understandably found on the toilet paper roll, toilet paper dispenser, and paper towel dispenser, for Strong used toilet paper and paper towels to clean himself. Feces were understandably found on the toilet, for Strong sat on the toilet to clean himself and to put his clothes back on. And feces were understandably found on the lower parts of the walls, near the floor, for Strong was attempting at a frantic pace to clean himself and his clothing, which was on the floor, and would have leaned against the wall as he did so.

One might reasonably infer willfulness if feces were found in difficult-to-clean places, but no feces were found on the drywall above the tiled parts of the walls, under the sink, on the sink, on the mirror, or on the plastic door shade. Furthermore, had Strong willed to cause damage, one would have expected him to abandon his soiled underwear in a manner other than draping it over the trash can.

As appears in the record reproduced earlier in this opinion, Strong categorically denied purposely spreading feces in any part of the bathroom. Nevertheless, the magistrate judge inferred willfulness not only from the location of the feces but also from the fact that the feces appeared to have been "smeared." This inference was unreasonable. Upon using the word "smears" in her testimony, Mason, the cleaning supervisor, was asked to specify

what she meant. She answered, "When I say smear, I mean, well, like a smear, but not necessarily like finger smears but just chunks -- chunks and smears, pretty much, kind of like chunky peanut butter." When asked about the pattern in which the feces were deposited, she answered, "Well, it wasn't splattered, it was smeared, that is for sure. It was -- it was smeared, and it was very chunky. But it wasn't splattered, meaning liquid. It didn't depict liquid. It may have been at one time, I don't know, but it was more smeared and kind of chunked on there than a liquid splatter." In other words, Mason used the word "smeared" to refer to the consistency of the feces rather than the way in which they were deposited. She even distinguished the type of smear to which she was referring from what she called "finger smears." No rational factfinder could infer willfulness from the consistency of feces.

Finally, it was unreasonable to infer willfulness from the fact that Strong did not report the incident. The reasonable inference to draw from this fact is that Strong was embarrassed of what had transpired.

### 3. **Plain Error**

I would find that these errors were clear and obvious in the sense that they were errors under the legal regime prevailing at the time of the proceedings. This is not a "special case where the error was unclear at the time of trial but becomes clear on

-51-

appeal because the applicable law has been clarified." <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 734 (1993); <u>see also</u> <u>United States</u> v. <u>Bennett</u>, 469 F.3d 46, 50 (1st Cir. 2006) (refusing to deem an error clear "[i]n light of conflicting case law").

Moreover, I would find that these errors affected Strong's substantial rights. To affect one's substantial rights, "'the error must have been prejudicial: It must have affected the outcome of the [lower] court proceedings.'" <u>United States</u> v. <u>Padilla</u>, 415 F.3d 211, 220 (1st Cir. 2005) (en banc) (quoting <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 734 (1993)). The distinction between willfulness and knowledge was crucial to the outcome here. While the evidence could have plausibly supported the contention that Strong <u>knew</u> his actions led to feces covering the restroom, the evidence was insufficient to support -- beyond a reasonable doubt -- the contention that Strong <u>intended</u> his actions to do so. Absent the errors in implying a mental state requirement of "knowingly" and in finding the evidence as to mental state sufficient beyond a reasonable doubt, Strong would not have been convicted.

Finally, I would find that these errors seriously impaired the fairness of the judicial proceedings. The fairness of the judicial proceedings is impaired when "leaving the error uncorrected would cause a miscarriage of justice." <u>United States</u> v. <u>McCoy</u>, 508 F.3d 74, 80 (1st Cir. 2007). This Court has

-52-

previously held that a "misstatement of the scienter standard" combined with the fact that the "evidence of scienter was thin" substantially affects the fairness and integrity of the judicial proceedings.  See United States v. Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000).

Because the magistrate judge committed plain error in finding that the Government had proved the proper mental state elements beyond a reasonable doubt, I would reverse Strong's convictions.

### III.  Conclusion

For the foregoing reasons, I respectfully dissent from the affirmance of Strong's convictions.



GOVERNMENT
EXHIBIT
10

Appendix B



Appendix C



Appendix D

